Gary GERRIN

v.

M. J. HICKEY, Individually and as Mayor of the City of Russellville, Arkansas, Jack Presley, R. D. Burnett, Cecil Criner, Roy Faulkner, Pat Humphrey, and John R. (Bobby) Evans, Individually and as Aldermen of the City of Russellville, Arkansas.

No. LR–C–75–66.

United States District Court, E. D. Arkansas, W. D.

Jan. 25, 1979.

Silas H. Brewer, Jr., Little Rock, Ark., for plaintiff.

John Harris, Russellville, Ark., for defendants.

## MEMORANDUM OPINION

ROY, District Judge.

Plaintiff Gary Gerrin brings this action pursuant to 42 U.S.C., Sec. 1983 alleging that the substantive basis and procedural methods of his discharge from employment as a fireman with the City of Russellville, Arkansas deprived him of rights secured by the Due Process and Equal Protection Clauses of the Fourteenth Amendment of the Constitution, as well as the rights of freedom of speech and association, and the right to petition the government for the redress of grievances guaranteed by the First Amendment to the Constitution of the United States. This action was tried to the Court sitting without a jury, and the following memorandum opinion constitutes the findings of fact and conclusions of law made by the Court, pursuant to Rule 52 of the Federal Rules of Civil Procedure.

### I.

### FINDINGS OF FACT

1. Defendants are the Mayor and individual aldermen of the City of Russellville, Arkansas, collectively comprising the City Council of that community.

2. Plaintiff began his employment with the Russellville City Fire Department on April 19, 1972 working initially as a part-time volunteer for six to eight months and paid a flat rate of $6.00 for each fire emergency attended.

In the latter part of 1972, plaintiff became a full-time, salaried employee of the City Fire Department. After a period of probationary service for six months, he became a "permanent" fire department employee, as that term is defined by regulations issued by the City Council and the City Fire Department. In addition to plaintiff's assigned work duties of driving a fire truck and operating the water pumping apparatus affixed thereon, during the last year of his employment plaintiff conducted authorized fire inspections at various business and public locations within the community and offered instruction in fire prevention and emergency evacuation procedures at these facilities. Upon attaining permanent employee status, plaintiff received a monthly salary increase and thereafter received a 10% salary increase afforded to all city employees.

4. In the late summer of 1974, a majority of full-time permanent employees of the City Fire Department elected to form a labor organization for the purpose of collective bargaining with city and fire department officials regarding wages, hours and working conditions. The group elected plaintiff president, and became officially chartered as a labor organization September 4, 1974. During the organizational period of this group, its members, including plaintiff, engaged in discussions with city and fire department officials regarding a salary increase for firemen. Shortly after the group became chartered, plaintiff was interviewed by a local television station concerning the objectives of the labor group. A film of this interview appeared shortly thereafter on television in the Russellville area.

5. The following events transpired sometime during September, 1974: An assistant to the Mayor, Ron Russell, informed plaintiff and his supervisor that the city could reduce firemen's compensation to the minimum level. Assistant Russell at a second meeting informed plaintiff and several other firemen that physical standards for departmental service could be made more stringent. At a third meeting, Assistant Russell informed several firemen that the city could lengthen their work week, as recommended by the Arkansas Municipal League. There was testimony that these statements were made in retaliation for the activities of the firemen as to the new labor organization. During this same period the Fire Chief informed plaintiff that a scheduled fire school could be cancelled because of the union activities.

6. During this same period, Pat Humphrey, a defendant alderman, and the liai-

son between the fire department and the city council, informed plaintiff at a social event that there had been a survey conducted of the councilmen regarding their attitudes about the firemen organizing a labor union. There was one member of the Council who opposed the efforts to organize at the time of plaintiff's termination. On cross-examination Alderman Humphrey stated that a fellow member of the Council remarked all members of the firemen's union should be dismissed because of union activities. Councilman Humphrey was the only member of the City Council who stated that complaints had been received about plaintiff and that he had discussed them with the Chief of the Fire Department. Councilman Humphrey did not know whether plaintiff was ever notified that complaints had been received.

7. On Sunday evening, November 24, 1974, while plaintiff was off duty, he, his wife and a friend visited a local supermarket. Upon returning to plaintiff's car located in the parking lot adjacent to the store, plaintiff observed that the automobile had been struck and damaged by another vehicle. A bystander informed plaintiff that he had witnessed another vehicle strike plaintiff's parked car, and gave plaintiff a physical description of that other vehicle. Following directions furnished by the bystander, plaintiff proceeded in the direction taken by the other vehicle in an attempt to overtake it. While en route, plaintiff used a radio installed in his car to report the incident to the local sheriff's office. While off duty the day before, plaintiff had been informed by his supervisor that the Chief of the Fire Department had ordered the removal of the radio, and the radio was removed by the time he reported to his next regularly scheduled work shift.

A short distance outside the Russellville city limits, plaintiff came upon a vehicle which met the description he had been given and, by activation of red flashing lights, plaintiff managed to get the driver to pull to a stop at roadside. After radioing his location to the Pope County Sheriff's Office, plaintiff approached the other vehicle, asked to look at the operator's license of the driver, Cindy Kinslow, and asked her to await the arrival of law enforcement officers. After approximately 15 minutes, the Pope County Sheriff arrived at the scene, briefly questioned Miss Kinslow, inspected her vehicle, advised plaintiff that her car contained too many dents to determine whether it had struck plaintiff's car, and recommended that Miss Kinslow be allowed to go. Plaintiff agreed and Miss Kinslow was permitted to leave.

8. On Tuesday, November 26, 1974, Assistant to the Mayor Russell called plaintiff and told him to attend the City Council meeting which would be held that evening and informed him that the Kinslow incident would be discussed. At the meeting, the City Attorney read Miss Kinslow's written statement regarding the November 24 incident. Plaintiff was asked to respond and Elton Toney, a friend who was not an attorney but who had accompanied plaintiff to the meeting, made a statement in his behalf. Miss Kinslow attended the meeting but was not asked any questions nor to make a statement. There was no testimony that plaintiff used harsh language or was abrasive in any way during the episode involving Miss Kinslow.

The Council members thereafter retired into closed session, accompanied by the Mayor and the Fire Chief. Plaintiff was not invited to attend this session, and he did not ask to attend. After an hour's deliberation, the Council emerged into public session again and issued a statement dismissing plaintiff from his duties as a Russellville fireman effective immediately, listing the following reasons:

(1) Involvement in an instance where Mr. Gerrin used unauthorized equipment in stopping and detaining Miss Cindy Kinslow;

(2) Acting arrogantly toward other Fire Department members:

(3) Showing disrespect and insubordination toward his superiors;

(4) Making unauthorized fire inspections;

(5) Has demonstrated poor public relations as a member of the Russellville Fire Department.

9. Prior to plaintiff's discharge from employment, he received no complaints, warnings or other forms of disciplinary action from city or fire department officials regarding his job performance. His immediate supervisor testified he had never given plaintiff any warnings that his work was not satisfactory and that he was unaware of any complaints from private citizens regarding plaintiff's employment performance.

## II.

### CONCLUSIONS OF LAW

#### A.

■ This Court has jurisdiction of plaintiff's cause of action pursuant to 28 U.S.C. Secs. 1343(3) and (4) since he predicates his allegations on a violation of federally protected rights. Because the relief sought by plaintiff was essentially equitable in nature, trial was had to the Court sitting without a jury. *Harkless v. Sweeney Independent School District, 427 F.2d 319 (5th Cir. 1970) cert. denied 400 U.S. 991, 91 S.Ct. 451, 27 L.Ed.2d 439 (1971).*

■ Plaintiff's employment with the Russellville Fire Department must be examined to determine whether there exists a 'property' interest therein which would trigger application of procedural constitutional safeguards. A public employee can predicate a claim of entitlement to such a property interest by virtue of an implied contract of employment, a statute, regulation or city ordinance, or through mutual custom or understanding. In any case, resort must be had to applicable state law to determine the sufficiency of that claim. *Bishop v. Wood, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976).*

In this case the Court is presented with the claim of a dismissed municipal employee who is not protected by civil service regulations, see Ark.Stat.Ann. Secs. 19–101 et seq. (Repl.1968), and the procedural safeguards provided that class of employees are inapplicable here. Arkansas case law has not specifically addressed the issue of whether a public employee not so protected but who has acquired "permanent" status as an employee has a property interest in that employment. Older decisions indicate that employment may be terminated at the will of either party where the contract of employment, either express or implied, designates no definite term of duration. See; e. g., Miller v. Mo-Pac Transportation Co., 225 Ark. 475, 283 S.W.2d 158 (1955). Such contracts are unilateral and lacking in mutuality and therefore there can be no breach of contract even though the fact that discharge may not be had without just and sufficient cause is a term thereof. *Roberts v. Thompson, 107 F.Supp. 775 (E.D.Ark. 1952); Tinnon v. Missouri Pacific R. R. Co., 282 F.2d 773 (8th Cir. 1960).*

Falling within this same spectrum are the cases involving non-renewal of employment contracts for public school teachers. Under Arkansas law, public school teachers are not designated "tenured" but are hired under the "continuing contract" system which provides for automatic renewal each year absent affirmative action by the school board. This system does not give rise to an expectation of continued re-employment which entitles the teacher to a property interest in that employment. *Cato v. Collins, 539 F.2d 656 (8th Cir. 1976); Clark v. Mann, 562 F.2d 1104 (8th Cir. 1977).*

■ Applicable personnel regulations can create a protected interest if they reflect a *de facto* policy of established guidelines to be followed prior to dismissal. Plaintiff's dismissal must be examined in the context of the policies, practices or rules and understandings promulgated and fostered by officials that would justify a legitimate claim of entitlement to continued employment. *Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972).* Where personnel regulations, viewed in their entirety, afford procedural steps to be taken prior to dismissal but toward that end, then the employing agency is bound to comply with these established standards even where the employee, in the absence of such standards, could have been summarily discharged at any time. *Mazaleski v.*

*Treusdell, 183 U.S.App.D.C. 182, n. 38, 562 F.2d 701, n. 38 (1977) rehearing denied, citing Vitarelli v. Seaton, 359 U.S. 535, 539, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959).*

Plaintiff has made no claim that he had a contract of employment with the City of Russellville for a specified period of duration. He does direct the Court's attention to certain provisions of two sets of regulations promulgated as binding on municipal employees of the City of Russellville: the City Personnel Policy and the General Rules of the City Fire Department. Plaintiff asserts that the property interest he claims in his employment attaches because of these "mutually explicit rules and understandings."

Regarding the City Personnel Policy, Article II, Section I provides that employees attain "permanent" status after successful completion of a probationary period of six to twelve months. It was undisputed that plaintiff had completed this probationary period and had attained the status of "permanent" employee of the Fire Department. Article III, Section II sets forth a list of specific grounds for which disciplinary action may be taken against city personnel. Article III, Section III provides "permanent" employees the right to appeal disciplinary action taken against them in the event they feel they have been treated "unjustly" as a result of that action. The term "disciplinary action" is not defined in the Personnel Policy nor is there any indication of the degree of severity it may take. By the usage thereof in Article III the Court finds that its application contemplates dismissal from employment as the harshest extreme since Section I(B), Article III provides that such action "(w)hen possible should be of an increasingly progressive nature and should only occur after proper warning by (the) supervisor." The appeal process from the action taken by the immediate supervisor follows as a right, and proceeds from supervisor through the department head, the Mayor of the city, and ultimate review in the City Council.

As to the General Rules of the Russellville Fire Department, Section 4 provides that members of the department may "prefer charges" against a supervisor in cases of alleged "unjust treatment." Section 39 provides a list of infractions which, upon "conviction," are deemed to be "sufficient cause" for termination from departmental service.

■ It is clear from the record that the City Council did not follow any of the personnel rules and regulations it had adopted in reaching the decision to dismiss the plaintiff. Although there is no express provision for a hearing at the instance of an employee's dismissal from service, that right is not expressly denied and may be implied from that Section of the regulations promulgated for the fire department which provides for dismissal upon "conviction." As stated in *Buhr v. Buffalo Public School Dist. No. 38, 509 F.2d 1196 (8th Cir. 1974), rehearing denied (1975),* where the regulation under consideration authorizes suspension "upon being found guilty" (or, as here, upon "conviction") some form of evidentiary hearing is intimated. *Id.* at 1202, note 6, citing *Strickland v. Inlow, 485 F.2d 186 (8th Cir. 1973), aff'd sub nom. Wood v. Strickland, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975).*

■ The defendants advised plaintiff to attend a meeting with less than 12 hours notice and stated it involved the Kinslow incident. Plaintiff was never notified that disciplinary action against him was being considered with respect to other incidents of alleged misconduct which the Council ultimately relied upon in its decision to dismiss him. Plaintiff was never advised that his position as a fireman was in jeopardy because of any alleged misconduct until the formal announcement of his discharge was read publicly. The circumstances surrounding plaintiff's notification of the Council meeting, the manner in which he learned of the subject of discussion and his notification of the series of charges which came after the Council had already reached its decision to dismiss him all lead the Court to conclude that plaintiff was never afforded an opportunity to respond to the allegations.

The Court might be reluctant to award plaintiff relief on this basis alone, unfair as the City action appears, because of certain Arkansas cases involving the dismissal of public school teachers where it has been held that they possessed no property interest in their employment. However, when these contentions of plaintiff are coupled with those discussed, *infra*, the Court has no difficulty in finding plaintiff is entitled to relief.

### B.

Plaintiff has secondly asserted that his dismissal by the City Council was in retaliation against his activities and efforts to establish a local firemen's union and therefore was in violation of his constitutionally protected rights of freedom of speech and freedom of association. The Court must agree with plaintiff on this issue.

■■■ It is incumbent on the Court to determine the real reason for plaintiff's dismissal. The burden is on the plaintiff to establish that the stated reason for termination was a mere pretext and that the actual reason was his exercise of a constitutionally protected right. *Williams v. Day, 412 F.Supp. 336 (E.D.Ark.1976), aff'd 553 F.2d 1160 (8th Cir. 1977).* Once plaintiff has assumed the initial burden and shown that his conduct or speech was constitutionally protected and that it was a 'substantial' or 'motivating' factor in the decision to dismiss, the defendant may show that it would have reached the same decision had the protected conduct or speech never occurred. *Mazaleski v. Treusdell, supra.* The proper test to apply "(i)s one which likewise protects against the invasion of constitutional rights without commanding undesirable consequences not necessary to the assurance of those rights." *Mount Healthy City Board of Education v. Doyle, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).*

The record made at the trial reflects that the efforts to organize a firemen's union commenced in the late summer of 1974 and that the organization was officially chartered on September 4, 1974. Plaintiff was a leader in the organizational efforts and was elected the first president of the local union. The record further reflects that during this same time at least two meetings were held attended by an Assistant to the Mayor, Ron Russell, the Chief of the Fire Department, plaintiff's supervisor and plaintiff to discuss salary increases and manpower increases. During these meetings, the firemen were informed that more stringent physical standards could be imposed and that the number of hours worked per week could be lengthened. Plaintiff testified that the Fire Chief himself threatened to cancel a fire school meeting because of the efforts to organize a union. It was undisputed that a telephone survey was taken of the members of the City Council to see if the active organizers of the firemen's local could be fired because of their involvement with union activities. Plaintiff was dismissed on November 26, 1974 upon only brief notification that the Kinslow incident would be discussed at an emergency Council meeting where he was given virtually no opportunity to prepare or rebut the allegation therein. His dismissal allegedly was predicated not only on the Kinslow incident, but also on other charges against him of which he was unaware until dismissal.

■■■ The Court finds that these incidents, when considered together and falling within the same time frame as the chartering of the local, reflect the hostility with which the efforts to unionize were met not only by plaintiff's departmental head but also the Mayor of the City and the City Council. The Court cannot say with any degree of certainty that plaintiff's efforts toward unionization did not motivate his dismissal since it occurred only a short time after the formation of the union and discussions had been commenced for improvements in wages and working conditions. The entire dismissal procedure employed here was tainted by the hostile attitude evidenced by these incidents, and this is especially true since plaintiff had no knowledge of any complaints regarding his employment performance as a Russellville fireman. Because the Court finds that the real reason motivating plaintiff's dismissal was

his involvement in the efforts to organize a firemen's local union, he is entitled to relief on that ground.

### III.

Since the Court has found that plaintiff's termination from city employment was predicated on a constitutionally impermissible reason, the remedy imposed must be fashioned in accord with the injury sustained. Because plaintiff's association with the organizational efforts of the firemen's local was the real reason for his dismissal, defendants must reinstate him to the position he formerly held or to a position that is comparable in terms of duties, responsibilities and salary. *See Langford v. City of Texarkana, Arkansas, 478 F.2d 262 (8th Cir. 1973).* Monetary relief in the form of back pay is an "ordinary" or "necessary" remedy for the unlawful discharge of a public employee and such an award may come from public funds under the defendants' control as part of an equitable decree. *Owen v. City of Independence, Missouri, 560 F.2d 925 (8th Cir. 1977).* A monetary award in the form of back pay is determined to the date of effective reemployment subject to the standard rules of mitigation and out of pocket expenses incurred in obtaining interim employment. *Greminger v. Seaborne, 584 F.2d 275 (8th Cir. 1978).*

At trial plaintiff adduced proof that he would have earned the following sums as a fireman had he remained employed:

| Year | Amount |
| --- | --- |
| 1974 | $    523.74 |
| 1975 | 7,541.88 |
| 1976 | 7,541.88 |
| 1977 | 8,296.08 |
| 1978 (through July) | 5,364.38 |
| Total | $29,267.96 |

Plaintiff also submitted evidence of earnings from other employment during the period since his termination as follows:

| Year | Amount |
| --- | --- |
| 1974 | $    –0– |
| 1975 | 2,633.00 |
| 1976 | 6,473.68 |
| 1977 | 6,500.00 |
| 1978 (through July) | 3,850.00 |
| Total | $19,456.68 |

In light of this credible testimony the Court finds the plaintiff is entitled to an award in the sum of $9,811.28 for back pay to July 1978 and pursuant to 42 U.S.C. § 1988, costs of this action shall be borne by the defendants, including a reasonable attorney's fee. Plaintiff shall submit to the Court within fifteen (15) days his claim for a reasonable attorney's fee pursuant to the guidelines set forth in *Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974),* which have consistently been applied in this Circuit. See *Allen v. Amalgamated Transit Union Local 788, 554 F.2d 876 (8th Cir. 1977), cert. denied 434 U.S. 891, 98 S.Ct. 266, 54 L.Ed.2d 176 (1978).*

Counsel for plaintiff and defendants are further directed to confer together and determine if a stipulation can be agreed upon as to damages incurred since July 1978 to the date of effective reinstatement of plaintiff. Counsel are also directed to agree, if possible, upon the proper amount to be assessed as attorney's fee and costs. If this is not possible, the Court should be advised within fifteen (15) days and the matter will be set for a hearing.

An Order in accordance with the findings as announced in this memorandum opinion will be entered on the date this litigation is concluded.