Suzanne **MARSHALL**

v.

Albert **ELWELL**, Barbara Houston, William Annis, B. Sharon Meeker, Linda Rockenmacher, William Skinner, Joseph Murdoch, Individually and in their official capacities as officers and members of the Oyster River Cooperative School Board; John H. Powers, Individually and in his official capacity as Superintendent of Schools; and William D. Sowers, Individually and in his capacity as Assistant Superintendent of Schools.

Civ. No. 80–407–D.

United States District Court, D. New Hampshire.

Aug. 26, 1980.

Anne S. Richmond, NHEA/NEA, Concord, N. H., for plaintiff.

Glenn G. Davis, Somersworth, N. H., for defendants.

## ORDER AND OPINION

DEVINE, Chief Judge.

For the past seven years, the plaintiff Suzanne Marshall has been employed as a part-time teacher of choral music in the Oyster River Cooperative School District ("District"). In the spring of 1980 this position was funded to become full time commencing in the fall of that year. Plaintiff was advised that she had not been renominated for her part-time position, but was invited to enter the lists in competition for the full-time position. She did so, together with eleven others, but was not successful in her quest.

Perceiving that certain of her constitutional rights have somehow been infringed because she was not hired for this new position, plaintiff has commenced this civil rights action, 42 U.S.C. §§ 1983, 1985, seeking injunctive, declaratory, and damages relief.[1] The complaint was filed on August 13, 1980, followed shortly by a motion for a temporary restraining order. Inasmuch as the allegations of the pleadings indicated that certain valuable benefits might be lost to plaintiff if the motion were not resolved prior to August 31, 1980, the Court interrupted a lengthy ongoing jury trial for a hearing on the motion on August 22, 1980. At such hearing, evidence was taken and arguments of counsel were heard. Upon review of such evidence, arguments, and the applicable legal authorities, the Court concludes that the motion for temporary restraining order must be denied.

## THE FACTS

Plaintiff Suzanne Marshall graduated with a Bachelor of Arts in biology from the College of New Rochelle, New York, in 1958. Following time out for marriage and child raising, she procured a Master's degree in music with a voice option from the University of New Hampshire in 1974. She has been a part-time teacher of choral music in the District for seven years, and the evaluations of her teaching by her supervisors are generally excellent. (Plaintiff's Exhibit 2.) Plaintiff has been enthusiastic, volunteering to assist in unpaid positions including acting as a college choice advisor to senior students, coaching at all musical shows, working with the jazz ensemble, and filling in on occasion for the part-time instrumental music teacher. She has also been vigorous and forthright in seeking expansion of music education from early consideration as an extracurricular to its present status as a full academic subject. Throughout her professional career, it has been her fond wish that her part-time position be expanded and funded for a full-time teacher.

In March of 1980 the District concluded that such a full-time position was warranted, and plaintiff was accordingly advised by a letter from Deputy Superintendent Sowers that she would not be renominated for her part-time position but that she was invited to apply for the newly created full-time position. (Plaintiff's Exhibit 4.) By letter of March 10, 1980, plaintiff did so. (Plaintiff's Exhibit 5.) Interested applicants were subsequently interviewed, apparently in late May or early June, and in June 1980 plaintiff received word that one Iris Levine was the successful applicant for the full-time choral music position.

Defendant John Powers, Superintendent of the District, has held such position for twelve years. Among his duties, he must nominate, and the School Board must either elect or reject, all teachers within his jurisdiction, RSA 189:39. Accordingly for the past seven years he has with full knowledge

---

1. The defendants in this action are the members of the Oyster River Cooperative School Board ("Board") and the Superintendent and Assistant Superintendent of the District.

of plaintiff's activities renominated her for the part-time position of Director of Choral Music in the District. By custom, part-time teachers are not considered to hold the same rights as full-time teachers, but the District affords them all of such rights. Additionally, although only certain retirement rights are mandated, the District grants part-time teachers the right to certain benefits, such as Blue Cross/Blue Shield.

When a significant change in a teaching position, such as upgrading a part-time to a full-time position, occurs, it is the position of the District to reopen and advertise for applicants for such position. Powers testified that the reason for this procedure is that a full-time position brings about a wider range of better qualified applicants than would a part-time position. In the instant case, there were twelve applicants for the position of full-time Director of Choral Music. Interviews of applicants were held by Assistant Superintendent Sowers, but Powers reviewed the file of each applicant before arriving at his final decision as to whom he would nominate for the opening. Powers testified that his choice of nominee was based on his educational philosophy that music should be expanded from its present five percent of the District student body to its full potential to allow as many students as possible to take advantage of a musical education. He said that he felt that the nominee chosen best fulfilled this educational philosophy. He also testified that he considered plaintiff, whom he had continuously renominated to her part-time position, to be a good teacher and that he would give her a good recommendation for employment elsewhere.

Plaintiff urges that the actions taken by the defendant violate her constitutional rights to procedural and substantive due process, equal protection, freedom of speech, and right to petition the government. She seeks reinstatement, the issuance of a contract, clearance of her record, and continuation of her Blue Cross/Blue Shield and other benefits, and

vacation of the Superintendent's decision not to nominate her for the full-time position of Director of Choral Music. In examining the basis for the plaintiff's non-reemployment, this Court seeks only to determine if in fact there has been an invasion of a constitutionally protected interest. In the absence of evidence that the stated reasons for such action are pretexts or subterfuges intended to becloud other and constitutionally offensive reasons, there is no basis for the granting of relief.

## I. Due Process

The official question to be addressed in a claim of the denial of procedural due process is whether plaintiff has a legitimate claim of entitlement to an interest protected by due process. If so, the next inquiry must be whether plaintiff was deprived of that property or liberty interest without due process, which necessarily encompasses the question of what process is due.

The standards for the definition of property interests have been laid out by the Supreme Court in *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972), in the following terms:

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. . . .
>
> Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

Inasmuch as the plaintiff's "property" interest, if any, is thus defined by state law as well as rules and understandings, express or implied,[2] arising from other independent

---

2. *See Perry v. Sinderman*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972).

sources, such as plaintiff's contract for employment,[3] we turn now to those provisions.

New Hampshire's statutory scheme which governs the relations between school board employers and their teacher employees is embodied in Revised Statutes Annotated, Chapter 189. Section 14–a thereof, entitled "Failure to be Renominated or Reelected", states:

Any teacher who has a professional standards certificate from the state board of education and who has taught for one or more years in the same school district shall be notified in writing on or before March 15 if he is not to be renominated or reelected. Any such teacher who has taught for 3 or more years in the same school district and has been so notified may request in writing within 5 days of receipt of said notice a hearing before the school board and may in said request ask for reasons for failure to be renominated or reelected. The school board, upon receipt of said request, shall provide for a hearing on the request to be held within 15 days. The school board shall issue its decision in writing within 15 days of the close of the hearing.

Plaintiff argues that inasmuch as she had been employed for seven years, even though part time, she had tenure and was therefore entitled to notice and to request reasons and a hearing pursuant to RSA 189:14–a. She further argues that the letter from Deputy Superintendent Sowers (Plaintiff's Exhibit 4) did not clearly state that she was unconditionally non-renewed, that she was entitled to clear notice that she was unequivocally non-renewed, and that the letter should have advised her of her entitlement to request a hearing and the deadline therefor. Her testimony was to the effect that upon receipt of the letter, it was not clear to her whether the instrumental music or the choral music position was the one to be fully funded, and that therefore, although in response (Plaintiff's Exhibit 5) she applied for the position of full-time choral music director, she was entitled to clearer notice that she would not be reemployed.

While there appear to be no clear New Hampshire decisions in point, it may well be that the New Hampshire Supreme Court, if faced with the issue, would decide that a part-time teacher in the position of plaintiff has tenure, provided that such teacher is certificated and has served for more than three years. *See Plymouth School District v. State Board of Education,* 112 N.H. 74, 289 A.2d 73 (1972); *Nazzaro v. Merrimack School District,* 118 N.H. 287, 385 A.2d 230 (1978). However, the Court finds this issue unnecessary to decide, for it finds and rules that on the evidence presented to it, the plaintiff was not entitled under RSA 189:14–a to more than a notice that she had not been renominated for her part-time position, and that the notice she received clearly indicated that such was the case.

Deputy Superintendent Sowers' letter to plaintiff on March 6, 1980 (Plaintiff's Exhibit 4), clearly indicated in its opening paragraph that the proposed school budget had been passed and gave the District the "assurance needed for following through on the Board's intention of increasing the district's choral music position to a full-time position". It then went on to state:

As you know, you have not been nominated to contract for 1980–81 pending this clarification of status of the choral music position for next year.

We will soon be advertising the position as a vacancy for next year and, of course, would welcome your application.

As I indicated earlier all you need do is write a brief note that you wish to apply for the new position and send anything we would not have on file concerning recent training, course work, etc.

The Court considers it unbelievable that one holding a Master's degree, such as the plaintiff, by a fair reading of the letter from Sowers (Plaintiff's Exhibit 4) could fail to arrive at any conclusion other than that her part-time position as Director of Choral Music had been abolished and therefore she would not be rehired in such posi-

3. *See Gerrin v. Hickey,* 464 F.Supp. 276 (E.D. Ark.1979).

tion, but that she would be invited to apply and compete for the position of full-time Choral Director. The plaintiff's position is similar to that of the Massachusetts teacher who contended that she had been deprived of due process because of the alleged failure to notify her of charges which led, among other results, to the denial of a certain salary increment.

> We hold that the procedures afforded appellant were constitutionally adequate. She had full notice of the charges against her and a chance to meet those charges in writing. *Since these procedures are for the use of well-educated individuals, there is no reason to think that they cannot express their position on paper.* See Matthews v. Eldridge, supra, 424 U.S. at 344, 96 S.Ct. at 907. This is especially so given her full access to information in her file and prior notice of the charges, permitting her to mold her response. *Id.* at 345–46, 96 S.Ct. at 908.

*Needleman v. Bohlen*, 602 F.2d 1, 5, 6 (1st Cir. 1979) (emphasis added).

Additionally, plaintiff's response to the letter from Sowers (Plaintiff's Exhibit 5) under date of March 10, 1980, expressed her delight in seeing her goal of having a full-time choral position come to fruition, and concluded:

> I am therefore hereby submitting my application for the full-time choral position at Oyster River.

▪ Coupled with the testimony of Superintendent Powers that the part-time teacher of instrumental music had been renominated to that position, the Court finds and rules that plaintiff was clearly aware that her part-time choral music position was being abolished, that she was being invited to apply for a new position which according to the custom of the District would be advertised among a wider range of qualified applicants, that there was no legal obligation on the part of any of the defendants to notify plaintiff that under the full terms of the statute she

could request a hearing and the deadlines therefor, that there was no obligation on the part of any of the defendants to even notify plaintiff of the contents of the statute, and that plaintiff was in fact clearly and duly notified that she would not be renominated to the part-time position of Director of Choral Music for the 1980–81 school year, as said position was being abolished.[4]

## II. *Equal Protection*

▪ The Court considers to border on the frivolous the plaintiff's allegation that defendants offered a full-time first grade teacher in the same District the position of a physical education instructor without advertising or interviewing for the position. Whatever might have been the result had plaintiff herself been in competition for such position, it is clear that whatever the merits of that contention, it has no application to *plaintiff's* equal protection under the "rational basis" test, which is the applicable standard herein.

## III. *First Amendment*

Plaintiff contends that "but for" her constitutionally protected activity of "statements, letters, and actions" made in regard to certain problems in the music department, she would have been selected as the nominee for the full-time choral music position. Applicable here is the case of *Mt. Healthy City Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), which requires plaintiff to sustain the burden that her conduct was constitutionally protected, and that such conduct was a "substantial factor" in the Board's decision not to rehire her. Once plaintiff has sustained such burden, it is required that a defendant school board must show by a preponderance of evidence that it would have reached the same decision as to plaintiff's reemployment even in the absence of the protected conduct.

4. The Court attaches no significance to Plaintiff's Exhibit 8, a letter dated March 9, 1976, at a time when plaintiff had not completed three years of service, wherein the first sentence of RSA 189:14–a is included.

Here, while it appears that plaintiff made a number of complaints about the music program during her employment as a part-time teacher, it appears that on practically every occasion these complaints were heeded and she was granted the relief sought. Thus, her complaint that students were being taken from academic classes to be in the chorus and band was upheld, she was given an expanded auditorium in which to teach music when she complained of cramped quarters, she received gas mileage among the buildings where she was required to teach, she persuaded the Board to consider that music was an academic and not an extracurricular activity so that funds for music would not be cut early in any school budget, she persuaded the authorities that part-time teachers as well as full-time teachers should get full step raises, and when she complained that although she was part-time she was required to be at school a full day, her hours were adjusted from 11 a. m. to 3 p. m. It further appears that when she appeared before the School Board in 1979 to argue for the full-time position of Choral Music Director, it was suggested to her by members of the Board that she should not ruffle the waters, but she did exercise her right to free speech and was not given a "hard time", nor was any hostility evidenced. And although plaintiff and her colleagues in the music department were reprimanded in 1976 (Plaintiff's Exhibit 3) for failure to follow channels, it would appear that if this was a source of contention, the defendants would have taken action at that time to non-renew plaintiff. In short, the plaintiff has failed to sustain her burden of persuading the Court that the choice of another as nominee for the full-time Choral Music Director position was motivated because of displeasure of any of the defendants at the exercise by plaintiff of any of her constitutionally protected rights.

Additionally, the Court finds little merit in the plaintiff's complaint that the selection of the full-time Choral Music Director was not more quickly accomplished. Nor do we attribute any wrongdoing to any defendant from the fact that she initiated the suggestion for her interview. Moreover, although it appears that her transcript and recommendation from the University of New Hampshire were missing from her file at the time they were reviewed by Superintendent Powers, the Court accepts his testimony to the effect that he did not need to review these items, as he well knew plaintiff's capabilities from her seven years of service in the system. Powers testified that he did review her more recent recommendations and laudations for service with state and regional choruses.

## CONCLUSION

The equitable relief sought by plaintiff requires the Court to consider the factors of (1) the significance of the threat of irreparable harm to plaintiff if such relief is not granted; (2) the balance between such harm and the injury that injunctive relief would inflict on defendants; (3) the probability of success on the merits; and (4) the public interest. *Grimard v. Carlston*, 567 F.2d 1171 (1st Cir. 1978); *National Tank Truck Carriers, Inc. v. Burke*, 608 F.2d 819 (1st Cir. 1979). While undoubtedly, as plaintiff has outlined, she will sustain harm in that her Blue Cross/Blue Shield benefits will be terminated, and she has to look elsewhere for employment, this harm is clearly outweighed by the other factors to be balanced by this Court. The record before the Court reveals that one party has been selected for the full-time position from twelve candidates. While plaintiff clearly hoped that she would be the successful candidate, in the absence of satisfactory proof that her constitutional rights have been infringed, it is clear that the balance between plaintiff's harm and the injury that equitable relief would inflict on defendants is weighted heavily in the defendants' favor. Likewise it appears that the plaintiff has little probability of success on the merits and that the public interest clearly requires that the soon-to-start school year go forward with the new full-time Choral Music Director in position. The suggestion of plaintiff's counsel that plaintiff be also hired and that no harm would occur from

expansion of the program with two teachers available is a matter properly addressed to the taxpayers of the school district, and not to this or any other court of general jurisdiction.

In sum, the instant case is one where the Court must be sharply aware of the previously-uttered warning of the Supreme Court that:

> Judicial interposition in the operation of the public school system of the Nation raises problems requiring care and restraint. Our courts, however, have not failed to apply the First Amendment's mandate in our educational system where essential to safeguard the fundamental values of freedom of speech and inquiry and of belief. By and large, public education in our Nation is committed to the control of state and local authorities. Courts do not and cannot intervene in the resolution of conflicts which arise in the daily operation of school systems and which do not directly and sharply implicate basic constitutional values.

*Epperson v. Arkansas*, 393 U.S. 97, 104, 89 S.Ct. 266, 270, 21 L.Ed.2d 228 (1968).

The Court sympathizes with plaintiff whose hope that she would be a successful nominee for the position she had long fought to establish has been shattered in the course of the competitive selection process. But in the absence of constitutional deprivation, there is no guarantee of absolute employment to one in her position. Again, in the absence of constitutional guarantees, the Court may not substitute its judgment as to the qualifications of one teacher as against another. School superintendents and school boards, where they do not infringe upon the constitutional rights of teachers, are entitled to exercise subjectivity in their approach and decision as to the best-qualified applicants for teaching employment. For the reasons hereinabove set forth, the motion for temporary restraining order must be, and it hereby is, denied.

SO ORDERED.