Ken PAYNE, Plaintiff,

v.

J. Barry BALLARD et al., Defendants.

No. J–C–83–123.

United States District Court,
E.D. Arkansas,
Jonesboro Division.

Oct. 11, 1984.

Marc Baretz, West Memphis, Ark., for plaintiff.

C.R. McNair, III, Asst. Atty. Gen., of the State of Ark., Little Rock, Ark., for defendant.

## MEMORANDUM OPINION

ROY, District Judge.

Plaintiff, Ken Payne, brought this action pursuant to 42 U.S.C. § 1983 alleging that his termination as an employee of the Cotton Boll Vocational Technical School violated his rights of procedural and substantive due process guaranteed by the Fourteenth Amendment, specifically alleging that he had both a property and liberty interest in his continued employment with the defendants. Additionally, plaintiff alleged that the actions of the defendants in terminating him were in violation of the employee grievance and appeal procedure in effect at the time of his termination.

The case was tried to the court on May 21 and 22, 1984.

Plaintiff, at all times during his employment with the Cotton Boll Vocational Technical School, was a resident citizen of Blytheville, Arkansas, and since his employment with the defendants, from 1979 through October 26, 1982, was an instructor at the Cotton Boll Vocational Technical School. Prior to his being employed at Cotton Boll, Mr. Payne had worked at various factory-type jobs as a draftsman or in related type of work. Mr. Payne had a high school education at the time of his employ with the defendants and did not have any post high school training or college courses and had no prior courses in teaching methods. Other than a one day period of orientation, defendants provided the plaintiff with no specific training either in his area of expertise or as to teaching in general.

The defendants are, in effect, the Cotton Boll Vocational Technical School, through its properly served agents and administrators. That school is an agency of the Department of Education, State of Arkansas and is located in Blytheville, Arkansas.

On or about August 27, 1982, the plaintiff was placed on probationary status by the defendants for an act of insubordination occurring on August 25, 1982. The insubordination concerned a request that he contact some high school students who apparently failed to return to Mr. Payne's classes after attending one day of class. The Vocational School commenced classes on or about August 9, 1982, with the high school students' first appearance at the Vocational School occurring on or about August 24, 1982.

William Nelson, Jr., Director of the Cotton Boll Vocational Technical School, had received information indicating that the reason some high school students did not return to Mr. Payne's class was because Mr. Payne had paid no attention to them.

Upon receiving this information, on August 25, 1982, William Nelson, Jr., asked Ken Payne three times if he would ascertain if the high school students who failed to return to his classes would return. It was not until the third request that Ken

Payne asked William Nelson, Jr. if he might have a day to think the matter over, and would advise Mr. Nelson the following morning as to whether or not he would in fact contact the students. Ken Payne testified that he thought that by agreeing to contact the students he was admitting that he had, in fact, run the students off, and that was the reason for his reluctance to contact the students upon Mr. Nelson's request. On the 26th of August, 1982, Ken Payne did not make contact with William Nelson, Jr., and at trial testified that he made some attempt to contact Mr. Nelson but that he bore the responsibility for not succeeding in contacting him on the 26th. Ken Payne left no messages with the secretaries to advise Mr. Nelson of plaintiff's attempts to reach him. William Nelson testified that he cancelled his lunch appointment the next day so he would not miss Mr. Payne, but Mr. Payne did not talk with Mr. Nelson until August 27, 1982, two days after their discussion. It was on August 27, 1982, that William Nelson, Jr. handed Ken Payne a letter indicating that insubordination was grounds for immediate dismissal and that Ken Payne could have been terminated on the 25th for his actions. The letter gave Ken Payne the option of contacting the students and being placed on probation, or not contacting the students and being terminated effective immediately. At that time, William Nelson, Jr., also advised Ken Payne that his employment status was changed and that he was no longer a permanent employee. The letter also stated that any subsequent acts of insubordination would be grounds for dismissal. Upon receipt of the letter, Ken Payne did, in fact, contact the students from Mr. Nelson's office and elected to appeal the action of placing him on probation as per the letter of August 27, 1982, through the employee grievance and appeal procedure.

The appeal to step 1 of the employee grievance and appeal procedure provides for a hearing to be scheduled with the employee within ten working days and the employee's immediate supervisor and area coordinator to be notified of the grievance by the personnel officer. Ken Payne testified that the Personnel Officer, Dianne Farquhar, called him and advised him that as time was running short regarding a decision to be made that a telephone conference was appropriate, and gave him the option of either having a conference by telephone or foregoing the hearing. Dianne Farquhar admitted at trial that the conference was, in fact, held by telephone but stated that Ken Payne was agreeable to holding the conference by phone. She further testified that she would never have agreed to a phone hearing if Mr. Payne had not so agreed. On or about September 24, 1982, Dianne Farquhar notified Ken Payne of her decision upholding the probation and advising him that he could continue on probation for the remainder of the school year. She did further advise him that if he was not satisfied with the decision that he might continue in accordance with step 2 of the employee grievance and appeals procedure. Ken Payne timely filed an appeal stating that he wished to continue the grievance to step 2. Once Dr. J. Barry Ballard, Director of the State of Arkansas Department of Education Division of Vocational Education, received the request for further review, he appointed an ad hoc committee to consider the case. On October 6, 1982, the ad hoc committee appointed by Dr. J. Barry Ballard met at the Cotton Boll Vocational Technical School and held a hearing. The subject of that hearing was the plaintiff's insubordination regarding his failure to call the high school students and his being placed on probation therefore. However, additional testimony was presented at the hearing and carefully considered by the committee regarding certain unauthorized schedule changes made by the plaintiff since the plaintiff's own grievance which was filed with the Committee raised the schedule change issue.

At the hearing that was held on October 6, 1982, Ken Payne appeared on his own behalf without representation. A transcript of the tape recording taken at that hearing was prepared and introduced as a plaintiff's exhibit. At various points in the

proceedings there were discussions about a change of schedule that Mr. Payne made after having been told not to do so by his superiors. Testimony revealed that the ad hoc committee based its decision upon its understanding that Mr. Payne had made changes in his classroom schedule in contravention of directives from his superior, June Walters. The transcript of the ad hoc committee hearing is replete with instances wherein plaintiff himself acknowledges that he had made schedule changes although directed by Ms. Walters not to do so. Plaintiff now complains, in retrospect, that the ad hoc committee members apparently misunderstood his testimony and that in fact he had not made schedule changes but only rearranged class time devoted to particular subjects. Plaintiff testified at trial that the class time rearrangements were approved by Ms. June Walters, the school's scheduling supervisor. Ms. Walters, however, explained in her testimony at trial how such changes would have been in violation of department policy and that as a result she would never have given any such approval. During his testimony, plaintiff Payne was unable to direct the court to any reference in the ad hoc committee transcript where he did not specifically admit to having made the schedule changes. It is true that at the committee hearing, Mr. Payne stated that he would not expect the administration to change the schedule that would conflict with other instructors, and that all he was asking was to change his class time only. Nevertheless, the transcript also clearly indicates that Mr. Payne stated that the full-time students were only getting half the drafting theory and half the communications, and that Mr. Payne answered affirmatively when asked if this constituted a schedule change. The Court has difficulty reconciling this testimony with the plaintiff's statement at trial that he did not make a schedule change involving less theory time. Furthermore, Dr. J. Barry Ballard, Director of the Division of Vocational Technical Education, Department of Education, the individual that ultimately made the determination that Mr. Payne should be terminated, testified that in the period of time between the recommendation of the ad hoc committee in October of 1982 and the review of Dr. Ballard's termination decision by the State Board of Education in January of 1983, numerous telephone conversations transpired between he and plaintiff without any reference to the alleged approval of the schedule changes by Ms. Walters. Although the transcript of the ad hoc committee hearing indicated some confusion on behalf of the members of the Committee concerning what, in fact, occurred, at no time did Ken Payne state that any changes he made were done with the approval of June Walters, the school's scheduling supervisor. It is inconceivable to the Court how plaintiff could have answered so many questions with respect to the schedule changes without ever stating June Walters gave him permission to do so. In fact, Mr. Payne himself conveyed the impression to the ad hoc committee that he had indeed changed his schedule although directed not to do so by a superior.

After hearing the testimony regarding Ken Payne, the committee recommended that Ken Payne be dismissed for insubordination with the reasons given being both his alleged failure to comply with a reasonable request from a supervisor, and second, his changing of the instruction schedule for drafting. One committee member voted to keep Mr. Payne on probation.

By letter dated October 26, 1982, to Ken Payne, Dr. Ballard did, in fact, fire Ken Payne. After the committee's recommendation of October 6 and until the letter of Dr. Ballard of October 26, Ken Payne continued with his duties as an instructor at Cotton Boll Vocational Technical School. At trial, Ken Payne testified that he continued during that twenty day interval to teach his class time in the same way and manner that he had done since August 25, 1982, and that nobody advised him to cease with any alleged scheduling changes after October 26, 1982. However, William Nelson, Jr., stated that the reason for this was because he didn't want plaintiff to subsequently allege that he was being harrassed.

Dr. Ballard testified that in reviewing the committee recommendation pursuant to step 2 of the grievance and appeal procedure, he realized more severe punishment resulted from the ad hoc committee hearing, and therefore he read the file carefully, listened to some of the tape of the committee hearing to get a feel for attitudes, and spoke to some of the committee members. He also reviewed the procedure manual. He stated that after the review it was clear that the initial act of insubordination was grounds for immediate dismissal, and that it was also clear from the transcript that there had been a second act of insubordination. Dr. Ballard stated that since dismissal is always preceded by the supervisor's recommendation, he called William Nelson and asked if he was aware of the schedule change. Mr. Nelson said that he was, and that he would recommend plaintiff's dismissal. Dr. Ballard further stated that if a subsequent committee had been formed, one of the issues which would be raised was whether June Walters gave the plaintiff permission to change the schedule, and that June Walters had denied giving permission at the Board review. Dr. Ballard stated that the ad hoc committee had the authority to recommend anything they want in terms of action to be taken against an employee. Although Dr. Ballard found it unusual to escalate the punishment, and although such action had never been taken before, he felt that after reviewing the case the action was warranted.

Following step 2 the grievance and appeals procedure process, Ken Payne appealed to step 3 of the grievance and appeal procedure for a hearing before the State Board of Vocational Education. That hearing was scheduled for January 20, 1983, in Little Rock, and by letter dated December 13, 1982, Dr. Ballard advised Ken Payne's attorney that there would be certain rules regarding the hearing held. There was a hearing held on January 20, 1983, and at that hearing, objections were made by counsel for plaintiff to the rules, specifically noting the lack of cross-examination of witnesses and the fact that the witnesses would not be under oath, setting out that it would not be too burdensome a task to permit both cross-examination and the swearing in of witnesses. The minutes of the State Board Meeting of January 10, 1983, indicate that the State of Arkansas claimed that due process did not require witnesses to be sworn in and cross examined and that the rules had been approved by the Office of Civil Rights. Chairman Hartsfield then ruled that the Board would continue under the rules identified in Dr. Ballard's letter. Further, at the hearing, objection was made to the fact that a hearing should be held concerning the probation status only and not the termination of Ken Payne as Ken Payne should not have been jeopardized for appealing his probation by escalating the punishment to termination. At that hearing, according to the plaintiff, without notice to plaintiff and over the objection of plaintiff, the Board considered aspects of Mr. Payne's entire work record and brought out matters such as his on-the-job rating by students and prior incidents of disciplinary disputes, none of which were addressed at the prior hearings or advised were being presented. According to the testimony at trial and exhibits introduced, plaintiff had received a letter of caution dated May 26, 1982, advising plaintiff that he must cease: 1) discussing anything about one student with another student or instructor; 2) discussing his personal problems of any nature with his students, and 3) using profanity in the presence of students; or his employment would be terminated. It was at the Board hearing that Mr. Payne requested that affidavits from two of his students identified below be made part of the hearing record to support his position that June Walters made improper suggestions for solving plaintiff's schedule problems.

Two former students of Ken Payne, namely Pat Hancock and Terry Rodgers, testified at trial that they were students of Mr. Payne's since the class commenced on August 25, 1982. They testified that June Walters, Assistant Director of Cotton Boll Vocational Technical School, in their pres-

ence came into the classroom and advised Ken Payne that a solution to the instructional problem concerning the training of high school students. was to either ask an advanced drafting student, Ronald Derbis, to train high school students in the 5th and 6th period class hours or to divide the theory time 5th or 6th period class hours and instruct thirty minutes for theory time to full time students and thirty minutes of theory time to high school students. They did further testify that they were present when the high school students came into the course and that they did not think Ken Payne had mistreated them in any way, or caused them to leave, and did further testify that they thought Ken Payne was a fine, impartial instructor and knew his craft well. However, June Walters testified that she did not in fact approve such a class time adjustment and that it was against regulations to have the adjustments made that were made inasmuch as the students weren't receiving enough theory time. It is true that June Walters testified before the ad hoc grievance committee that, "*I said you can change anything on your schedule that doesn't affect the related instructor and mess up another department's schedule.*" Furthermore, with respect to recommending an advanced student to help teach the class, June Walters testified that she never recommended that an advanced student help teach the class, but may have suggested that an advanced student help a slower student as an example of who a high school student could shadow. June Walters also testified that any time a schedule change is requested, it should be submitted in writing. However, although plaintiff testified at trial that he gave one hour of theory each day, a review of the ad hoc committee transcript indicates that the changes made by Ken Payne were, in fact, in contravention of school policy since Ken Payne testified before the ad hoc committee that post-secondary students were only receiving one half hour of theory time rather than the required one hour.

Plaintiff now contends that he did not address the schedule change issue as clearly as it could have been addressed because there was never any notice that this issue was the subject of the hearing, and that while it was mentioned and discussed by the committee members and Mr. Payne, it is clear from the testimony given to the committee members that several schedule changes and/or class time requests were involved but not orderly addressed by either Mr. Payne or the committee. Plaintiff therefore contends that the committee in essence escalated the punishment based upon consideration of issues of which he had no notice. The Court finds this argument to be unpersuasive. It was plaintiff who raised the issue regarding schedule changes in his grievance, and it was plaintiff who appeared to contend that the schedule change issue was closely related to the reasons why he was placed on probation.

Plaintiff submits in the alternative that even if his termination were justified, it was procedurally improper. More specifically, plaintiff contends that under the immediate dismissal procedure, the immediate supervisor and the area coordinator must consult with the personnel administrator before taking any action, and that such procedure was not followed in the instant case. Defendants submit that the department policy was technically complied with and, in any event, that the spirit of the procedural protections envisioned by the policy were extended to plaintiff.

The Department of Education immediate dismissal policy provides for the immediate termination of an employee for insubordination. Defendant Nelson was Mr. Payne's supervisor. The area cordinator, Mr. John Kauffman, was a member of the ad hoc committee that met to review plaintiff's grievance. Dianne Farquhar was the department's personnel administrator and also on the ad hoc committee. Mr. Nelson had formally notified Mr. Payne in his letter placing Mr. Payne on probation that future acts of insubordination would result in his termination. It therefore appears that all the required parties were in agreement that Mr. Payne should be terminated

and that technical compliance with the wording of the policy would have required all the parties to have reconvened to review the identical evidence already uncovered by the ad hoc committee.

Dr. Ballard testified that the purpose of the policy and its procedural steps was to insure that by the time he made the ultimate decision to terminate an employee, all the relevant facts were before him. Feeling that this was the case, Dr. Ballard further testified that he had no reason to feel that a second committee would uncover anything that the first committee had not yet presented to him. Dr. Ballard also testified that he did contact Mr. Payne's superior, Mr. Nelson, prior to deciding to terminate Mr. Payne and received Mr. Nelson's concurrence in his decision.

This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1343(3) which authorizes the jurisdiction of claims brought pursuant to 42 U.S.C. § 1983 to enforce rights guaranteed by the constitutional laws of the United States. The Court also has jurisdiction pursuant to 28 U.S.C. § 1331 in that the amount in controversy exceeds, exclusive of interest and costs, the amount of $10,000.00. Plaintiff contends that he had a property interest in his continued employment as a permanent employee of the Cotton Boll Vocational Technical School since he was employed as an instructor from 1979 and October 1982. Further plaintiff states that he had a protected liberty interest as an employee of said institution as he was dismissed from his employment based upon an unsupported charge which affected his good name and reputation, thereby requiring due process. Additionally, jurisdiction is invoked pursuant to the substantive and procedural due process guarantees of the Fourteenth Amendment with the assertion that Defendants' actions in failing to follow the employee grievance and appeal procedure and failing to reinstate the plaintiff after having appealed his probation violated said due process clause and was further arbitrary and capricious. Plaintiff alleges a pendant claim in that the actions of the defendants in terminating him was in breach and violation of the employee grievance and appeal procedure and thereby in breach of the contract of employment with the Cotton Boll Vocational Technical School as said procedure forms part of the basis of the employment relationship and contract.

It is well established that the Fourteenth Amendment forbids the state to deprive any person of life, liberty, or property without due process of law. *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975).

■ Before considering the due process arguments, the Court must first determine that the termination adversely affected protected "property" or "liberty" interests. *Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); *Gilbreath v. East Arkansas Planning and Development District, Inc.,* 471 F.Supp. 912 (E.D. Ark.1979).

■ The opportunity to be a public employee is not a protected legal or constitutional right as such. *Mittelstaedt v. Board of Trustees of University of Arkansas,* 487 F.Supp. 960, 972 (E.D.Ark.1980). However, it has been held that a protected interest in employment may be created by express contract, *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *Johnson v. City Council of Green Forest, Arkansas,* 545 F.Supp. 43 (W.D. Ark.1982); by a federal or state statute or regulation, *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Bishop v. Wood, supra; Johnson vs. City Council of Green Forest, Arkansas, supra; Seal v. Pryor,* 504 F.Supp. 599 (E.D.Ark.1980), *aff'd,* 670 F.2d 96 (8th Cir.1982); by a specific tenure contract, *Slochower v. Board of Education,* 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692 (1955); *Seal v. Pryor, supra;* by an implied contract, *Bishop v. Wood, supra; Perry v. Sindermann, supra; Seal v. Pryor, supra; Gerrin v. Hickey,* 464 F.Supp. 276 (E.D.Ark.1979); *Gilbreath v. Arkansas Planning and Development Commission, Inc., supra;* and by applicable personnel regulations if they reflect a

de facto policy of established guidelines to be followed prior to dismissal. *Bishop v. Wood, supra; Board of Regents v. Roth, supra; Perry v. Sindermann, supra; Gilbreath v. Arkansas Planning and Development Commission, Inc., supra;* and *Gerrin v. Hickey, supra.*

Another Eighth Circuit opinion states that a plaintiff may alternatively establish a property interest by showing "mutually explicit understanding" or common practices and agreement derived from the employer-employee relationship which would create a sufficient expectancy of continued employment to merit some due process. *Brockell v. Nouton,* 688 F.2d 588 (8th Cir. 1982).

■ In the present case, no contract with a specific term of duration existed, and the employment relationship was thus terminable at will by either party under Arkansas law. *Gilbreath v. East Arkansas Planning Commission and Development District, Inc., supra; Arkansas Livestock & Poultry Commission v. House,* 276 Ark. 326, 634 S.W.2d 388 (1982); *Seal v. Pryor, supra.*

■ Neither party has pointed to any federal or state statute or regulation establishing a property interest.

Plaintiff appears to be arguing that the fact that he was a certified instructor until 1986 (the expiration date of his certificate) constituted a specific tenure contract or an implied contract that he would be employed until 1986. However, Dr. Ballard testified that said certificates were obtained for their instructors for the purpose of meeting certain standards and requirements, not to establish a contract with the employee. In fact, plaintiff testified that he could quit any time as long as he gave notice.

The only theory which contains some merit is plaintiff's claim that the employee grievance and appeal procedure reflects established guidelines to be followed prior to dismissal, and that the defendants failed to follow said guidelines before dismissing him. However, as will be discussed later, the minor deviations in the present case did not amount to a constitutional deprivation of property without due process.

■ Plaintiff also alleges that his good name and reputation has been affected by his wrongful termination. This could constitute a "liberty" interest if the requisites in *Bishop v. Wood, supra,* were satisfied:

In *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), we recognized that the nonretention of an untenured college teacher might make him somewhat less attractive to other employers, but nevertheless concluded that it would stretch the concept too far "to suggest that a person is deprived of 'liberty' when he simply is not rehired in one job but remains as free as before to seek another." *Id.* at 575, 92 S.Ct. at 2708. This same conclusion applies to the discharge of a public employee whose position is terminable at the will of the employer when there is no public disclosure of the reasons for the discharge.

Plaintiff testified that until he obtained his present job, he was turned away from jobs he wouldn't have expected to be turned away from and that word of his termination had gotten around and stigmatized and hurt his reputation. No other evidence was presented to support these allegations. In fact, plaintiff even admitted that it was William Nelson, Jr. who recommended him and helped him get his present job.

The Court finds the evidence to be insufficient that plaintiff's "liberty" interest was affected.

If the Court were to conclude plaintiff had a property interest by virtue of the applicable regulations, the Court would nevertheless conclude that plaintiff was given sufficient due process.

■ The court finds the arguments in the present case with respect to failure to follow the provisions contained in the employee grievance and appeal procedure to be similar to those advanced in *Derrickson v. Board of Education of the City of St. Louis,* 703 F.2d 309 (8th Cir.1983). In *Derrickson* a probationary teacher brought a

civil rights action alleging wrongful discharge. It was alleged that Missouri statutory law and the regulations of the Board established a property interest in continued public employment which the defendants took from the plaintiff without due process required by the fourteenth amendment. The Court concluded that the Missouri statute in question did not create a reasonable expectation of continued employment, and then discussed the defendants failure to follow established Board procedures in deciding not to retain him after his third probationary period.

Derrickson argues that the defendants failed to comply with the regulations because the members of the special evaluating committee did not formally meet and all three members did not submit a formal committee recommendation to the Superintendent. He does not contest the facts that the members of the committee informally conferred about his nonretention and that Spicer and Waggoner, two of the three committee members, actively participated in the formal drafting of Spicer's report, dated March 13, 1978, which explained the reasons for Spicer's nonretention recommendation to the Board and Superintendent Wentz on March 14, 1978.

We agree that a state agency's failure to follow its own ordinances and regulations may constitute a deprivation of property without due process. *See Wilson v. Robinson*, 668 F.2d 380, 382–383 (8th Cir.1981) (county ordinance requiring two weeks notice prior to the termination of non-probationary sheriff's deputies creates a property interest protectable under the fourteenth amendment). *Cf. McDonald v. Mims*, 577 F.2d 951, 952 (5th Cir.1978) (state procedural protections cited as alternative source of the "property interest" held by "non-tenured" teachers in Mississippi). In this case, however, we find that the defendants' alleged minor deviations from the regulations at issue, as a matter of law, do not amount to a constitutional deprivation. The Director of Personnel did appoint a special evaluating committee

which in fact provided the input concerning Derrickson's suitability for tenure which the regulations were designed to provide.

*Id.* at 315. The Court finds the reasoning and conclusions reached in *Derrickson* to be appropriate in the present case. As stated earlier, the immediate supervisor and the area supervisor did not consult with the personnel administrator in a separate procedure regarding the schedule changes. However, the area coordinator and personnel administrator were privy to and participated in the extensive discussions relating to the schedule changes. Furthermore, the immediate supervisor was contacted by Dr. Ballard and asked if he was aware of the schedule changes before Dr. Ballard affirmed the committee's recommendation.

In addition, much of plaintiff's case in this regard attempted to establish that the decisions made at the various proceedings provided were not supported by substantial evidence. To the extent that a plaintiff challenges administrative actions taken against him, the district court should not provide a *de novo* review under § 1983 of a fact finding board's determinations. *Cf. Cummings v. Dunn*, 630 F.2d 649 (8th Cir.1980); *Willis v. Ciccone*, 506 F.2d 1011 (8th Cir.1974). (Prison disciplinary board hearing). Federal courts do not review disciplinary actions for sufficiency of evidence. It is only when a party suffers deprivations of constitutional dimension that a federal court may become involved. *Cf., Courtney v. Bishop*, 409 F.2d 1185 (8th Cir.1969), *cert. denied*, 396 U.S. 915, 90 S.Ct. 235, 24 L.Ed.2d 192 (1969). (Prison disciplinary action).

Even if this court were not convinced that there was substantial evidence to support the personnel action taken against plaintiff, it would refrain from substituting its judgment for that of the responsible officials that were in a better position to weigh the evidence leading to plaintiff's termination.

With respect to the failure to allow plaintiff to cross-examine the witnesses at the Board hearing, it has been held that cross-examination need not be a part of every hearing in order to satisfy due process. *Woodbury v. McKinnon*, 447 F.2d 839 (5th Cir.1971), *Winston v. United States Postal Service*, 432 F.Supp. 1117, (N.D.Ill.1977), *aff'd*, 585 F.2d 198 (7th Cir. 1978).

"A fundamental purpose of the due process clause is to allow the aggrieved party the opportunity to present his case and have its merits fairly judged." *Pollock v. Baxter Manor Nursing Home*, 716 F.2d 545 (8th Cir.1983). Mr. Payne heard the evidence against him and was afforded the opportunity to rebut that evidence during his own testimony. Nothing prevented plaintiff's counsel from pointing out inconsistencies in testimony.

Furthermore, it has been held that proof of a denial of due process requires a showing of substantial prejudice. *Ka Fung Chan v. Immigration Naturalization Service*, 634 F.2d 248 (5th Cir.1981); *United States v. Lober*, 630 F.2d 335 (5th Cir.1980). The plaintiff has made no such showing.

The United States Supreme Court has described due process as follows:

... "[d]ue process, 'unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances." (citations omitted). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." (citations omitted).

*Matthews v. Eldridge*, 424 U.S. 319, 334, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976); *Finney v. Mabry*, 528 F.Supp. 567 (E.D.Ark. 1981).

Due process depends upon three factors: (1) The private interest involved; (2) the risk of erroneous deprivation of those interests through the procedures used and the probable value of additional procedures and (3) the government's interests, including the fiscal and administrative burden that additional procedures would entail. *Matthews v. Eldridge*, 424 U.S. at 335, 96 S.Ct. at 903.

This Court, after considering the factors enunciated above, finds that the plaintiff in the present case was not deprived of procedural due process by the failure of being able to cross-examine at the Board hearing.

Accordingly, the plaintiff's case is hereby dismissed.