MELTON *v.* CARTER.

4-6763 164 S. W. 2d 453

Opinion delivered June 22, 1942.

*Harold Kohn; House, Moses & Holmes* and *Lee Cazort, Jr.,* for appellant.

*Robert Rosenberg* and *Owens, Ehrman & McHaney,* for appellee.

GRIFFIN SMITH, C. J. Constitutionality of Act 94 is the issue. The measure became a law February 25, 1941, without the governor's signature.

The controversy goes back to a suit by the state to prevent Gus Blass Company from engaging in the practice of optometry. Collateral issues were involved. *State ex rel. Attorney General* v. *Gus Blass Company*, 193 Ark. 1159, 105 S. W. 2d 853. Act 27, approved February 11, 1935, was before the court. It was entitled "An Act to define and prescribe the practice of optometry; to prescribe procedure for the practice of optometry, the power of the [state board of examiners], and for other purposes." In the decision the following expression was employed:

"We are of the opinion that the legislature did not attempt to classify optometry as a learned profession, but that it used the term 'profession' in its broader and more general meaning. . . . If the general assembly intended to advance optometry to the rank of a learned profession, it would have doubtless said so in express terms."

Act 94 is entitled, "An Act to define the practice of optometry, to regulate the practice thereof, to provide for the creation and powers of the state board, the enactment into one law of the laws relative to the practice of optometry, and for other purposes."

Section 1 is: "The practice of optometry is hereby declared to be a learned profession, and the same rights, powers and duties are hereby declared to attach thereto as attach to any other learned professions."[1]

W. A. Carter instituted the suit from which this appeal is prosecuted, naming the state board of optometry as defendants. Carter is employed by B. Gainsburg, a citizen of Harrisburg, Pennsylvania. Gainsburg conducts an optical department in the Gus Blass department store, where Carter, admittedly a competent optometrist,

---

[1] The language appearing as § 1 of Act 94 is copied *verbatim* from Act 109, approved February 21, 1939, amending Act 123 of 1915. Following approval of Act 109, suit was brought by W. A. Carter to restrain the state board from enforcing its provisions. A temporary order was issued, but there was no final hearing upon the merits. The National Optical Stores Company sued in federal court to restrain enforcement of the measure, allegation being that it was unconstitutional. District Judges Trimble and Lemley sat with Judge Woodrough of the court of appeals for the Eighth circuit and denied relief.

represents Gainsburg. Gainsburg is engaged in the sale of eyeglasses, spectacles, lenses, frame mountings, and other optical materials.

Section 1 of Act 94 is challenged on the ground that optometry, not being comparable to law, medicine, or theology, is not a learned profession, being limited in its character because those engaged in the practice do not have the background, training, and education characterizing the three professions mentioned. It is further argued that dispensing eyeglasses is a commercial transaction, involving only such knowledge as is necessary to fill prescriptions written by optometrists or oculists.

Section 5, limiting applicants for examination to persons over twenty-one years of age, of good moral character, and requiring that such applicant be a graduate of some "Class-A" school of optometry, is void, say appellees, because the Act does not indicate how Class-A schools shall be designated; hence there is an improper delegation of power.

The objection to § 8 (3) is that it gives to the board power to determine what acts on the part of a licensed optometrist shall constitute unprofessional conduct. It is feared mere opinion or caprice may control members of the board.

Section 9 (3) is alleged to be fatally defective in that it authorizes the board to revoke the license of an optometrist who accepts employment from a person, firm, or corporation engaged in any business or profession ". . . to assist it, him, or them in practicing optometry in the state [if the employer is not himself a licensed optometrist]." Such provision, it is argued, bears no relation to the public health, safety, morals, or other phase of the general welfare. The right of Carter to continue his present employment is, it is urged, a valuable property right. "The practice of optometry," says the complaint, "is merely an occupation calling for the use of mechanical skill, [and] so long as optometrical services are actually rendered by a registered optometrist, no restrictions may be imposed upon the right to

employ an optometrist.'' Effect of enforcement, it is said, is to deny equal protection of the law to those so affected, in violation of the Fourteenth amendment to the federal constitution, and of § 8, art. 2, of the state constitution.

Section twelve is void because (a) subsection (2) makes it unlawful for any optometrist, physician, or surgeon, to advertise in any manner . . . any fraudulent, false, or misleading statements as to the skill or method of practice ''. . . of himself or of any other optometrist, physician, or surgeon, or to advertise in any manner with intent to mislead, deceive, or defraud the public.'' Title of the Act, say appellees, defines the practice of optometry and its regulation, and ''. . . the foregoing intends to regulate the conduct of physicians or surgeons who practice their profession not because of the optometry Act nor because of the exemption contained in § 16, but because a physician or surgeon, by virtue of his license under the medical Act, has the right to perform all the duties given to an optometrist under the provisions of this Act.''

(b) Subsection (3) of § 12 makes it unlawful for any person, firm, or corporation, or any optometrist, physician, or surgeon, to advertise, either directly or indirectly, free optometrical service or examinations, or to advertise by any means whatsoever any definite or indefinite fee for professional services rendered or for materials furnished by an optometrist, physician, or surgeon. Appellees think the provision is void because physicians and surgeons are not amenable to the optometry Act, and that prohibition against advertising is an arbitrary enactment, interfering with a lawful business or permissive occupations. The further objection is that articles that may be lawfully sold cannot be advertised.

The flaw in subsection (6) of § 12, making it unlawful for any optometrist, physician, or surgeon, to accept employment from any unlicensed person, firm, or corporation, ''. . . or in any other manner assisting . . . in the unlawful practice of optometry'' is that it bears no relation to public health, safety, morals,

or welfare, but is an unreasonable and unnecessary restriction placed upon appellee Carter and others similarly situated, preventing them from pursuing lawful occupations.

Section 13, denouncing violations of the Act as a misdemeanor, is void because, in the Act's title, optometry is the subject intended to be regulated; and, since physicians and surgeons fall within the measure's terms, the title is misleading and constitutionally insufficient.

The Gus Blass Company and Gainsburg were made parties to the action.

The complaint was amended. Section 1 of the Act, it was said, provides that ". . . the prescribing, dispensing, adapting, or duplicating of lenses, prisms, or ocular exercises are a part of the acts which constitute the practice of optometry; and § 16 of the Act does not apply to physicians and surgeons, nor to persons who sell glasses wholesale on prescription where no attempt is made to practice optometry. B. Gainsburg is also engaged in such acts, and since he is not exempted from the provisions of the Act, he is denied the equal protection of the law."

A temporary injunction restraining the board from revoking Carter's license was granted February 26, 1941.

The answer admitted that Gainsburg advertised prices, and the terms upon which glasses would be sold, but alleged that these advertisements were published in the name of Gus Blass Company.

There can be little doubt that the general assembly had power to declare optometry a learned profession, and this it has done on two occasions since Mr. Justice BUTLER stated in his opinion of May 11, 1937, that if the lawmaking body had intended such designation it would have made the classification by express language.

The decree from which this appeal comes holds that Act 94, insofar as it attempts to prohibit optometrists from accepting employment from unlicensed persons, or insofar as it prohibits unlicensed persons from employing licensed optometrists, and in its pronouncement against advertising prices, is unconstitutional because

the purpose is not to promote the public peace, health, or welfare.

Appellees insist that optometry is a business, as distinguished from a profession, and that it depends for its success ". . . upon the choice of a good business location, the use of efficient advertising methods, intelligent buying, and effective selling. This commercial background brands optometry as a mercantile business."

Attention is directed to the July 6, 1928, issue of Public Health Reports, then published by the treasury department, where it was said: "An optician, or optometrist, or eyesight specialist, is not a graduate physician or doctor of medicine; and he does not diagnose or treat diseases of the eye. He is trained to grind and measure lenses and to fit frames properly. . . ."

This summary, it will be noted, speaks of "eyesight specialists." Marked progress has been made during more than thirteen years that have intervened since the treasury publication distinguished between optometry, medicine, and surgery. Whether the article was written by a physician, an optometrist, a surgeon, or a layman, is not disclosed.

Typical of some of the testimony regarding methods of examination and required knowledge is that of Dr. Carl F. Shepard, an instructor in the Northern Illinois College of Optometry. An examination, he says, is divided into three parts. First, there is the case history. The patient is questioned about diseases that might affect vision; about environment, lighting conditions, and the nature of work the patient is required to do. The second part is the objective phase, ". . . in which we use such instruments as the retinoscope, ophthalometer, and ophthalomoscope. We also determine that there are no diseases of the eye. This involves a study of the eye while it is in use at a near point and at a distance. The third phase is called the subjective procedure. The extent of the tests which we make depends upon the condition of the eyes. If we encounter conditions that call for certain other types of tests, we test the sets of

muscles in the eyes. As we make the findings in the course of our examination, we write them down."

Dr. K. W. Cosgrove made interesting comments in testifying. He is a practicing physician; a member of the American Medical Association, associate professor of pathology at the medical school of the University of Arkansas, state board of health consultant in trachoma, a member of state and national associations, and is connected with the state public welfare department. He is an ophthalmologist and prescribes lenses, but does not use "drops" in the eyes in all cases. Such practice is known as cycloplegia and has reference to paralysis of the muscles of the eye which are affected by curvature of lenses. As a rule cycloplegia is not used where patients are more than thirty years of age. . . . It often occurs that patients with diseased eyes are referred to Dr. Cosgrove by optometrists, and, conversely, Dr. Cosgrove refers patients to optometrists in order that examination may be made with an ophthalometer, an instrument not used by Dr. Cosgrove.

It was conceded by appellee Carter that refraction of the eyes, or examination, whether by a physician or an optometrist, is a professional act, but, it is argued, sale of glasses after a prescription has been procured is a commercial transaction.[2]

Regarding the right of a professional man to advertise, the Supreme Court of the United States said in *Semler* v. *Oregon Board of Dental Examiners*, 294 U. S. 608, 55 S. Ct. 570, 79 L. Ed. 1086:

"It is no answer to say as regard to appellant's claim of right to advertise his professional superiority

---

[2] In their brief appellants say: "In fairness to the Blass Company we wish to say that the men who are employed there as optometrists are capable. . . . However, the company has been repeatedly advised that if it would lease the department directly to a licensed optometrist, relinquish control over the manner in which the department is operated, and allow the optometrist to carry on his own practice, there would be no violation of the law. In this manner the real party in interest would be directly responsible and answerable to the public. The optometrist examining the eyes would be responsible to the patient. As the situation now exists, the optometrist is the servant or employe of an undisclosed non-resident master whose sole interest is the volume sale of glasses."

or his performance of professional services in a superior manner, that he is telling the truth. In framing this policy the Legislature was not bound to provide for determination of the relative proficiency of particular practitioners. The Legislature was entitled to consider the general effect of the practices which it described, and if these effects were injurious in facilitating unwarranted and misleading claims, to counteract them by a general rule even though in instances there might be no actual misstatement.''

It seems perfectly clear that Mr. Justice BUTLER and other members of the court who made the opinion in the state's suit against Blass in 1935 intended to say that if the general assembly, by express language, should classify optometry as a learned profession, such determination, being an expression of public policy, would not be in excess of legislative powers. Those interested in the profession were justified in believing that an Act defining the practice and placing necessary safeguards around it would not be overridden by the judicial department.

It is true that Act 94 deals with subjects not discussed in the court's former opinion, and a long forward step has been taken in collecting and reëxpressing provisions found in former laws and adapting them to present conditions. If optometry were a business rather than a profession requiring a high degree of skill and knowledge, the rights of appellees would be property, and subject only to reasonable regulation under the police power. *Stuttgart Rice Mill Company* v. *Crandall,* 203 Ark. 281, 157 S. W. 2d 205.

Appellees direct attention to this comment made by Mr. Justice BUTLER in the cited case:—''What difference could there possibly be to the public whether their eyes were fitted and glasses furnished by [an optometrist working for himself, or by one working for another?] *To sustain the contention of the appellant would destroy the intent of the legislature.''* [3]

---

[3] Italics supplied.

Here, again, is an expression indicating that legislative intent would be permitted to control. The intent now having been formulated in language too plain to be misunderstood, a current holding that the lawmaking body was without power to do what the court implied it had a right to do would be arbitrary and would amount to judicial legislation.

We have not overlooked *Liggett Company* v. *Baldridge,* 278 U. S. 105, 49 S. Ct. 57, 73 L. Ed. 204. A Pennsylvania statute provided that every pharmacy or drug store in the state should be owned by a licensed pharmacist. As to corporations and partnerships, all partners or stockholders should be prarmacists. In invalidating the requirement the court said: ["The statute] plainly forbids the exercise of an ordinary property right, and, on its face, denies what the constitution guarantees. A state cannot, 'under the guise of protecting the public, arbitrarily interfere with private business or prohibit lawful occupations or impose unreasonable and unnecessary restrictions upon them'." See, also, *Schnaier* v. *Navarre Hotel & Importation Company,* 182 N. Y. 83, 74 N. E. 561; *People* v. *Ringe,* 197 N. Y. 143, 90 N. E. 451, 27 L. R. A., N. S., 528, 18 Ann. Cas. 474. Other decisions are cited.

The Liggett case deals with property—the right to hold stock in a pharmaceutical corporation, partnership, or to be sole or part owner. There is nothing in Act 94 prohibiting Gainsburg, Blass, or anyone else from owning stock in an optical company. What the measure prohibits is employment of an optometrist by one who is not licensed. In other words, a layman may not engage in the profession by employing a licensed optometrist.

Section 16 of the Act is printed in the margin.[4]

Unless a particular policy promulgated by the legislature and sought to be enforced is prohibited by the

---

[4] "Nothing in this Act except as expressly provided otherwise herein shall apply to physicians and surgeons, nor to persons who sell eyeglasses, spectacles, or lenses at wholesale on prescriptions from optometrists, physicians, and surgeons, nor shall it prohibit the sale of ready-made glasses and spectacles when sold as merchandise at established places of business, where no attempt is made to practice optometry."

constitution, either expressly or impliedly, courts will not hold the enactment void.

The challenged Act has for its purpose (or at least the general assembly so found) the protection of those who *might* be (but who in the case at bar were not) imposed upon by unscrupulous practitioners. It is unfortunate that the business of a trustworthy and highly reputable establishment must be restricted, and that an ethical and competent optometrist in the person of Dr. Carter will be adversely affected. But, believing as we do that no constitutional right has been invaded—although the legislative policy may be questioned by those who oppose the measure—we have no recourse but to say that the Act is valid, and that the decree must be reversed. It is so ordered.