MILLER *v.* MISSOURI PACIFIC TRANSPORTATION CO.

5-740                                                                  283 S. W. 2d 158

Opinion delivered October 31, 1955.

*O. D. Longstreth, Jr., Dave E. Witt* and *Joseph Brooks,* for appellant.

*Pat Mehaffy* and *Herschel H. Friday, Jr.,* for appellee.

PAUL WARD, Associate Justice. Appellant, J. T. Miller, instituted this suit to enforce the terms of an alleged contract under which, it is contended, appellee, the Missouri Pacific Transportation Company, was obligated to give him permanent employment. The prayer was for specific performance of the alleged contract and for damages for the breach thereof for a period of one year. From an adverse ruling appellant prosecutes this appeal.

The alleged contract relied on by appellant consists principally of a memorandum from District Lodge 158, of which appellant was a member, to appellee, of a letter from appellee to said Lodge and of certain oral testimony. It is appellant's contention that the alleged contract was entered into for his benefit and that he has a right to sue thereon.

J. T. Miller at the age of approximately 55 years first entered appellee's employment in Little Rock as a laborer. On August 8, 1946, while in said employment, he was injured and as a result was confined to the hospital for 11 weeks and 3 days. After discharge he stayed at home and went back to the doctor every day for some time and then went back to work on February 1, 1947, but he was unable to stand on his feet for long periods of time or to do the heavy work to which he had been accustomed. At about the same time he filed a claim for compensation and received $20 per week for the time he had been unemployed or a total of $502.88 and his hospital bill for $735.13 was paid. He has never at any time since filed any further claim for compensation under the Workmen's Compensation Act. When he was discharged from the hospital he was told to return if his injured leg or arm "broke down." After appellant served as a laborer for a short while he was promoted to the status of an apprentice, and by combining his hours as a laborer and an apprentice he accumulated sufficient hours, under existing rules, to be again promoted. Consequently on December 3, 1949, he was made a mechanic, and he worked in this category at labor he was physically able to perform until November 29, 1951, when he was furloughed along with others because of a forced reduction in employment.

In September, 1949 [while appellant was still an apprentice] negotiations began between District Lodge 158 and appellee, as apparently was usual each year, relative to working relations between the two. These negotiations terminated in an agreement on October 15, 1949, in St. Louis. At this time there was present, representing appellee, R. J. McDermott, vice president; G. W. Mar-

riott, general manager; J. N. Henase; and R. C. Cheatham, superintendent of automotive equipment. Representing District Lodge 158 was H. I. Hahn, general chairman; D. C. Brown, grand lodge representative for the International Association of Machinists; G. J. Ferguson, committeeman; and J. I. Sharp, local chairman from Kansas City—now deceased.

During the last minutes of the final negotiations on October 15, as referred to above, Mr. Cheatham brought up the matter of Mr. Miller's status as an employee. It appears that at that time appellant was the only apprentice employee and that if he was immediately promoted to a mechanic he would be unable to hold his job because, at the time, there were unemployed mechanics in the Little Rock area who had more seniority than he had. It was then that Mr. Cheatham, who knew appellant and said he wanted to help him, suggested to the Union representatives that if they were willing for the company to promote appellant to a mechanic that appellee would try to work out some sort of a job that he could handle. Mr. Hahn stated: ''Well, if the company is willing, it is a nice gesture on the company's part, and if they want to try to help the man, as far as we are concerned, if the management and the local people at Little Rock can work out an arrangement whereby it will be satisfactory to them, of course, we will have no objection.'' Mr. Cheatham stated that he would contact Mr. Woodyard, the shop superintendent at Little Rock, and see if appellee had enough work to make a job for appellant.

In accordance with the above arrangement representatives of Local Lodge 158 had a conference with Mr. Woodyard relative to appellant's status as an employee. This meeting resulted in a memorandum prepared by representatives of the Local Lodge, which reads as follows:

''With reference to Mr. J. T. Miller being set up to journeyman mechanic and being placed on light work that he is able to handle, we wish to state that if the company is willing to keep this man on such light work that he is able to do. Due to the fact that this man is disabled

to do heavy work, we will agree to protect this man's job so far as our seniority right will allow us.

"What we mean by this seniority right is that by using Rule XVI in our agreement no one would have the right to disturb this man, other than men that come under the same rule.

"This is subject to approval by H. I. Hahn and D. C. Brown."

The above memorandum was mailed to Mr. Cheatham in St. Louis. Mr. Cheatham's reply dated December 3, 1949, is as follows:

"In compliance with the attached as submitted by the local shop committee, Little Rock garage, concerning apprentice mechanic, Mr. J. T. Miller, if the proposal is accepted, it is understood that Mr. Miller will not be disturbed by the exercising of seniority and bidding, we will place him on a mechanic's hourly rate with the following duties, hours and days of rest:

"[Here is set in detail the hours and nature of employment.]

"Will you kindly advise with return of attached copies of this letter, affix your signature on each and retain one copy for your records."

A copy of the above letter was returned to Mr. Cheatham indorsed as follows:

"ACCEPTED & AGREE:
"For MISSOURI PACIFIC TRANSPN. CO.
"By /s/ R. J. McDermott
"Vice President
"For DISTRICT LODGE No. 158
    INTERNATIONAL ASSOCIATION OF
    MACHINISTS.
"By /s/ D. C. Brown
"Grand Lodge Representative
"By /s/ H. I. Hahn
"General Chairman."

Appellant's employment was terminated by a letter dated November 23, 1951, from Mr. Cheatham to D. C. Brown and H. I. Hahn, in their representative capacities, which reads as follows:

"With reference to the attached.

"I regret very much to advise that we find it necessary to abolish the position of Mr. J. T. Miller at Little Rock, Ark., which was set up on December 3, 1949, which by reason of a number of changes at that point can no longer be maintained. As you no doubt are aware, our revenues have dropped to such a low level that the pressure is on me from all angles and it becomes necessary for me to take every step possible to effect reduction in our maintenance costs."

In accordance with the above appellant was furloughed on November 29, 1951. It appears that a few weeks later appellant had the opportunity, in compliance with company rules, to retain his seniority rating but he chose not to do so. Although appellant has made an effort to obtain employment since he was furloughed he has not been able to do so to any considerable extent due apparently to his disabled condition.

After a careful review of the record and after careful consideration of all of the contentions and arguments set forth by appellant in his able brief, we are led to the conclusion that the decree of the trial court must be sustained. Conceding, for the purpose of this opinion, that appellant has a right, as a third party beneficiary, to maintain an action for relief under the alleged agreement, yet we are unable to find in the memorandum and letters set forth above or in the testimony relative thereto any promise or obligation on the part of appellee to provide lifetime employment for appellant. We gather from the record that appellant would have been without employment in December, 1949, if it had not been for the proposal made by Mr. Cheatham. It appears that his proposal was made and agreed to by the Local Lodge in an effort to avoid appellant's immediate removal from employment. The arrangement resulted in a benefit to

appellant in that he retained employment until the company was forced to furlough him the latter part of November, 1951. We are forced to conclude that appellee discharged all obligations it owed to appellant when it made special provisions for a job that he could handle and retained him therein as long as the job existed. The only thing said by any of appellee's officers that tends in any way to show that appellant was to have a permanent job was a statement attributed to Mr. Woodyard, the Little Rock shop superintendent. Fred Francis, a witness for appellant, stated that he had a conversation with Mr. Woodyard in which Mr. Woodyard said that some of the boys who had been laid off thought they could "bump" appellant, but Woodyard told him, Mr. Ferguson and Mr. A. J. Pope that there was no way anybody could "bump" appellant as he had a lifetime job because of his injuries. This alleged statement, however, was made by Mr. Woodyard subsequent to the time that the agreement sued on was entered into. At most this amounted to Mr. Woodyard's interpretation of the agreement and he, of course, had no authority to bind appellee. It must also be borne in mind that appellant at no time claimed that he was obligated to work any definite length of time for appellee.

The duration of a contract of employment has been heretofore considered by this court. In the case of *Ashley, Drew & Northern Ry. Co.* v. *Cunningham,* 129 Ark. 346, 196 S. W. 798, Cunningham gave the railway company a right of way deed in which it was provided that the latter would give him a job as brakeman at salary of not less than $50 per month. After a year and a half the road was sold to another corporation which a short time later discharged Cunningham. In holding that there was no breach of contract the court stated:

"The contract in the present case can only be construed to provide for hiring, not at the will of one of the parties, but at the will of both, and in this respect it differs from contracts which provide for service as long as the persons to be hired are willing to serve. It being for

an indefinite period, it must be construed as being terminable at the will of either party.''

Our holding in the case of *Moline Lumber Company* v. *Harrison,* 128 Ark. 260, 194 S. W. 25, 11 A. L. R. 466, was to this effect: ''. . . where the matter of duration of a contract of employment is not specified in so many words, a hiring being at a specified rate per year, month or week imports a hiring for the full period named,'' but that where no definite term of employment is specified the employment may be terminated at the will of either party in the absence of other circumstances controlling the duration of employment.

If the agreement here had specified that appellee would give employment to appellant as long as he desired to work, a question would be presented which we need not at this time decide, but the record does not show that such duration of employment was agreed upon.

It is earnestly insisted by appellant that this case should not be decided in accordance with the rules above announced for the reason that appellant had a valid claim which he could have asserted before the Workmen's Compensation Commission but that he was led and induced by appellee not to file such a claim until after the time for filing had expired. We cannot, however, agree with appellant in this contention. In the first place, if appellant has allowed the time to elapse for filing a claim before the Workmen's Compensation Commission he may have been willing to do so in order to retain employment with appellee for an indefinite period or as long as appellee was able to provide him with a job. In the second place, there is no testimony in the record to substantiate appellant's contention that appellee in any way induced him not to file such a claim, and there is certainly nothing in the memorandum and letters from which such conduct on the part of appellee can be inferred.

Accordingly the decree of the trial court is sustained.

Affirmed.