Peron B. JOHNSON, Plaintiff,

v.

CITY COUNCIL OF GREEN FOREST,
ARKANSAS; et al., Defendants.

Civ. No. 80–3022.

United States District Court,
W. D. Arkansas,
Harrison Division.

March 25, 1982.

Wayne B. Ball, Fayetteville, Ark., for plaintiff.

Michael Rainwater, Gill, Skokos, Simpson, Buford & Owen, Little Rock, Ark., for defendants.

## MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

Plaintiff, Peron B. Johnson, a former police officer for the City of Green Forest, Arkansas, brings this action under the provisions of 42 U.S.C. § 1983 alleging that the basis for and manner of his termination as a police officer of the city deprived him of rights secured by the due process and equal protection clauses of the Fourteenth Amendment of the United States Constitution, as well as rights guaranteed by the Fourth and Sixth Amendments to the Constitution. Suit was filed against "City Council of Green Forest, Arkansas," and the mayor and city council "individually and in their official capacity." The City of Green Forest was not joined as a defendant.

After the matter had been set for trial, the parties agreed to submit the matter to the Court on stipulations of fact, and such stipulations have now been filed and the parties have submitted and the Court has considered briefs, and is now prepared to render its opinion. The following memorandum opinion constitutes the findings of fact and conclusions of law made by the Court pursuant to Rule 52 of the Federal Rules of Civil Procedure.

Before stating its findings of fact, it should be pointed out that, although the city council of Green Forest was sued and the mayor and city council were sued both individually and in their official capacity, in stipulations which will be discussed in more detail below, the plaintiff stipulated:

> The Plaintiff stipulates that he is not seeking a Judgment against the individual Defendants in their individual capacities and hereby dismisses all individual Defendants in their individual capacities.

Since the plaintiff is not seeking judgment against the individual defendants in their individual capacities, and since the City of Green Forest is not a party, the Court is not certain what is left. In his brief, the plaintiff refers to actions taken by "the City" and it appears that he believes that his cause of action is against the City of Green Forest. While the defendants, in their brief, point out this technical defect in plaintiff's cause of action, it does not appear that any objection has been made on this basis, and defendants' brief also addresses the question of whether the plaintiff should be granted a remedy against the City of Green Forest. Thus, the

Court will construe the position of the parties to be that no remedy against the city council or the individual members thereof or the mayor is requested and will consider the relief sought to be relief requested against the City of Green Forest.

The prayer of the complaint requests temporary and permanent injunctions enjoining the defendants from refusing to reinstate the plaintiff and from "denying or conspiring to deny petitioner the right, privilege and immunity to be free from bills of attainder or the right to engage in a common occupation or profession of life, or otherwise deny the plaintiff his right of political expression and freedom of association or other rights, privileges and immunities" secured by the United States Constitution. He seeks an award of back wages and a reasonable attorney's fee.

The defendants answered, denying the material allegations of the complaint, and affirmatively pleading that the defendants were performing discretionary duties as part of their official responsibilities and that they performed same in good faith.

In written stipulations filed in the case, signed by the attorneys for the parties, it is stipulated that the Court has jurisdiction of the parties and subject matter and that the matter is submitted to the Court on the stipulations. It is also stipulated that "the Defendant City of Green Forest, Arkansas, is a municipality incorporated and governed by the laws of the State of Arkansas," and that the individual defendants, with the exception of James Eldridge, were at the time of the occurrence members of the city council of Green Forest, and that James Eldridge, at such time, was the mayor of such city. Additional stipulations of fact material to the issues raised in this matter are:

5. The Plaintiff was employed as full-time salaried police officer for the City of Green Forest, Arkansas, from August 15, 1977, until February 20, 1979, after having worked for over a period of one (1) year as a police officer at the City of Berryville, Arkansas, having attended and satisfactorily completed the courses offered by the Arkansas Police Academy and was duly qualified for the position of patrolman.

6. That the Plaintiff was employed at the Green Forest Police Department on August 16, 1977, at a salary of $475.00 per month which salary was increased to $500.00 per month after ninety (90) days after commencing employment, and which salary was increased to $636.00 per month in March of 1978, which was the amount of the salary at the date of termination.

7. Plaintiff had no written contract of employment with the City of Green Forest, Arkansas, specifying the term or duration of his employment.

8. That at approximately twelve o'clock noon, February 20, 1979, Plaintiff, Butch Johnson, was informed by the Chief of Police that a special called meeting of the City Council of Green Forest, Arkansas, would convene at 7:30 p. m. The Chief of Police would testify that he does not recall discussing the particulars of the 7:00 meeting with Plaintiff, but Plaintiff, Butch Johnson, was invited to attend said meeting.

9. At approximately 3:30 o'clock on February 20, 1979, Plaintiff, Butch Johnson, was given written notice from the Police Chief of the City of Green Forest, Mr. Jim Ward, that the Plaintiff was suspended without pay as of that day, as a result of "irregularities in duty logs and radio logs dated 11–30–78" and "entry of one 1978 Lincoln Automobile . . . without probable cause." That a copy of said Notice is attached hereto, marked Exhibit "A" and made a part hereof. That at that time Plaintiff surrendered his shield and identification.

10. The Chief of Police would testify that the two complaints set forth in the written notice of suspension "Exhibit A" are related to the same incident as the two matters actually considered by the City Council at the 7:00 meeting.

11. That the meeting was called by Defendant, James Eldridge, Mayor of the City of Green Forest, Arkansas, on the

20th day of February, 1979, by announcement, and was attended by James Eldridge, Charles DeLozier, Larry Boss, Gerald Epley and Margaret Buell.

12. That the Plaintiff would testify that he was notified that the action to be considered at the meeting were with respect to complaints against the Police Department.

13. That the Plaintiff will testify that he did not know that the purpose of the meeting was to consider *his* termination.

14. That no notice of the meeting was published in the paper and no written agenda was prepared.

15. Plaintiff was not required to attend said meeting, but attended the City Council meeting, which was held at the City Hall, and was a public meeting attended by citizens and residents of Green Forest, Arkansas. At said meeting Plaintiff was given the opportunity to make a statement concerning alleged complaints against the Police Department. Plaintiff was not represented by an attorney at said meeting.

16. That the minutes of the Special Meeting of the City Council of Green Forest, Arkansas, of February 20, 1979, provide as follows:

February 20, 1979

Special meeting of City Council, Green Forest. Present: Mayor Eldridge; Recorder Villines; Aldermen Boss, DeLozier, Epley and Alderwoman Buell.

Purpose of the meeting is to discuss complaints against Patrolman Peron (Butch) Johnson, by Gene Epley, who was involved in a one-car accident on Nov. 29, 1978, on Highway 311 North. Gene Epley was unable to attend this meeting but he was represented by his parents, Mr. and Mrs. Epley. They complained about the harassment to their son by Patrolman Johnson. Johnson stated that he went to the Epley residence to get Gene to return to the scene of the accident, because State Patrolman Tom Gray was there and needed to ask him some questions. Gene was taken to the scene by his parents and Patrolman Johnson returned to his Post in Green Forest. Upon questioning Patrolman Gray, by the Council, he verified the statement made by Johnson.

The other incident involved the arrest of a man at the Mattox House Motel on Feb. 12, 1979. It was later determined the man arrested was wanted in the State of Virginia. After Johnson had given his account of the incident Patrolman Clifford Webb was questioned by Council and his statement coincided with the statement given by Johnson. Mayor Eldridge called for the meeting to go into executive session to discuss the matter. After much discussion by Mayor and Council on both incidents, the open meeting was re-convened.

The majority of Council seemed to think Johnson had placed his life in danger, along with the lives of Patrolman Webb and Deputy Sheriff Dale Walden, who were with him at the time of the arrest. Johnson was also off duty that evening and he admitted having two or three beers before the arrest was made. Council is of the opinion that any patrolman should not make an arrest when he has been drinking.

Mayor Eldridge asked Council if they were ready to vote on the matter. Motioned by Epley; second by DeLozier, to dismiss Johnson immediately. Each alderman and alderwoman were asked for a voice vote, and Recorder Villines called the roll. The vote to dismiss Patrolman Johnson immediately was as follows: Epley, Yes; Boss, Yes; DeLozier, Yes; and Buell, No. The motion carried.

Motion by DeLozier, Second by Epley, to adjourn. Motion carried.

/s/ Recorder Rex Villines

/s/ Mayor James Eldridge

17. After listening to statements of individuals called to attend the meeting and the statement of the Plaintiff, the City Council went into executive session to further discuss the matter. During

the executive session, the City Council voted four to one to terminate the employment of Mr. Johnson.

18. Thereafter, after the meeting of the City Council re-convened, and in said meeting, Mr. Johnson was informed of his termination and the reasons given for the termination are set forth in the City Council meetings as placing his life in danger along with the lives of Patrolman Webb and Deputy Sheriff Dale Walden, and making an arrest after he had been drinking. That the cause given for termination by the council are not the reasons set forth on Plaintiffs Notice of Suspension from the Chief of Police, but arose out of the same occurrence that one of the reasons set forth in the Notice of Suspension arose out of.

19. That the City Council Meeting was the only opportunity to determine the sufficiency of the allegations of complaints against Plaintiff.

20. That during Plaintiff's term of employment and on February 20, 1979, the City Council of Green Forest, Arkansas, had no established, written or published guidelines for regulations of conduct of a police officer, for establishing grounds for termination or suspension, and had no established or published procedure for hiring, discipline, or dismissal of police officers.

21. On February 20, 1979, the City of Green Forest, Arkansas, had no prescribed rules establishing how much time must expire between the time a beer is consumed off duty and when he may assist in carrying out the duties of the police department. The Plaintiff had never been warned of any specific policy regulating police officer assistance in police matters after having consumed a beer while off duty.

22. On February 20, 1979, the City of Green Forest, Arkansas, had no prescribed rules concerning endangering lives while on duty.

23. That the Plaintiff contends that his conduct while performing his duties with the City of Green Forest, Arkansas, prior to his dismissal on February 20, 1979, were satisfactory. Defendants contend that the reasons for suspension and termination were unsatisfactory conduct as a police officer.

24. That the Plaintiff contends that the reasons for his termination are false. Defendants contend that said reasons are true.

25. That the Plaintiff contends the dismissal has damaged his good name, reputation, and integrity and diminished his opportunity to find employment in law enforcement. The Plaintiff has been unable to obtain employment in law enforcement elsewhere since the date of his suspension and termination despite his efforts to obtain such employment.

26. That the Plaintiff's salary would have continued to increase as a result of the City employees and, specificially [sic], the police department receiving cost of living increases, which amounts will be furnished by Plaintiff at the appropriate time.

27. That the reasons for the Plaintiffs termination were made public and were broadcast over KTHS Radio Station and were published in local and area newspapers. That a copy of publications appearing in the Carroll County Tribune in the next following issue is attached hereto and marked Exhibit "B" and made a part hereof.

28. That there was no testimony at the hearing establishing the period of time which had elapsed since Plaintiff had consumed a beer while off duty and had assisted in police matters, or whether the judgment or coordination of Patrolman Johnson was impaired thereby.

Exhibit "A" referred to in the stipulations is a handwritten note dated February 20, 1979, written by Chief of Police, Jim Ward, to Patrolman Johnson advising him that he was suspended as of February 20, 1979, without pay. The note states:

Complaint # 1 stems from irregularities in duty logs and radio logs dated 11–30–78.

Second Complaint, entry of one 1978 Lincoln auto. bearing KY. vehicle Lic. ADD–379. Entry without probable cause.

Exhibit "B" is a photo copy of an undated newspaper article which reports on the city council meeting and the results of the meeting and, among other things, states:

This is not the first time a Green Forest City Council had met in special session to discuss the conduct of Patrolman Johnson. Similar meetings have been held in the past, but Johnson's employment with the police department had been able to survive these earlier tests.

The council appeared to base its decision to dismiss Johnson for his conduct in arresting a suspect February 12 who was wanted in Virginia. Johnson had earlier given his account of the circumstances leading up to the arrest of the suspect. Following this, Patrolman Clifford Jay Webb was called to the meeting to give his account, which in general coincided with Johnson's statements.

After hearing the statements of the patrolmen and asking some questions of them, Mayor James Eldridge moved the meeting into executive session to discuss the matter. The open session was later reconvened.

After reconvening the open session, little was said about the executive session discussion. It appeared to be the opinion of the majority of the council that Johnson had placed his own life in jeopardy and the lives of Patrolman Webb and Deputy Sheriff Dale Walden by taking hasty action in making the arrest.

Johnson was off-duty at the time of making the arrest at the Mattox House Motel and admitted to the council that he had had "Two or three beers" before the incident took place. He told the council that he did not feel that this affected his performance of duty.

The article then goes on to report the vote of the city council in open session.

■ For its findings of fact required by Rule 52 of the Federal Rules of Civil Procedure, the Court adopts the stipulation of facts entered into by the parties and outlined above. Based upon these facts, the Court finds that the action of the City Council of Green Forest, Arkansas, in terminating the employment of plaintiff as a city policeman did not violate any "federal rights" guaranteed to him by the Constitution of the United States or any federal law.

Before going into detail on the reasons for such conclusion, the Court desires to point out that it, along with many courts, has concern about the effect on the federal judiciary of cases filed under the provisions of the Civil Rights Act of 1871 (42 U.S.C. § 1983). Let the Court hasten to say that it fully recognizes the laudatory purposes of the Act at the time that it was passed and the reason for it, and that it further recognizes that there are still cases in which citizens are deprived of rights guaranteed by the Constitution and for which the provisions of this Act can be and should be utilized. Let the Court further hasten to say that in spite of this concern, it has diligently attempted to determine the law applicable to this case and to apply what it believes to be the pronouncements of the United States Supreme Court and the Court of Appeals for the Eighth Circuit to the facts in this case.

However, the Court wonders if the drafters of section 1983 or the drafters of the United States Constitution, even in their wildest dreams, ever believed that a suit resulting from the termination of the employment of a police officer in Green Forest, Arkansas, would come within the provisions of either the Act or the Constitution so as to make the questions raised cognizable by a federal court. The drafters intended federal courts to be courts of limited jurisdiction and at least thought in enacting the provisions of Amendment X, that all rights not specifically given to the United States by the Constitution were reserved to the states.

The Court at least wonders if the provisions of section 1983 should have been expanded by the courts to encompass all types

of cases such as a myriad of cases in which the court is asked to determine whether public officials such as zoning boards, city councils, hospital boards, mayors, school boards, and the like were correct in carrying out the duties imposed upon them by law and by the citizenry. Not only has the function of the federal judiciary been expanded beyond the point where, in this Court's view, the drafters of the Constitution intended it to go, such expansion has, among other reasons, caused the filings in federal courts to go to the point where the entire system is in danger. As one distinguished judge has observed: "The reality is that today there is a mad rush to the federal courts." Aldisert, Judicial Expansion of Federal Jurisdiction: A Federal Judge's Thoughts on Section 1983, Comity and the Federal Caseload, 1973 A. O. & Soc. O. 557, 559.

The Court recognizes that it might be argued that the somewhat philosophical dissertation set forth above is not relevant in this case, but the Court believes that it is relevant to show why this Court does not intend in this case, unless clearly required by law, to substitute its judgment for the judgment of the city council and mayor of Green Forest, who had the obligation and duty to do what they thought was best for the citizenry of that town, and who had to do it on the spot without the benefit of the two days of legal research that this Court has engaged in to determine what the law may be. As Justice Powell pointed out in a dissenting opinion in *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975), a case involving an action of an Arkansas school board, it is probably too much to expect that local officials will know what the law is relative to constitutional rights since the courts are not, by any means, in unanimous agreement in this respect. As Justice Powell said:

The Court's decision appears to rest on an unwarranted assumption as to what lay school officials know or can know about the law and constitutional rights . . . One need only look to the decisions of this Court—to our reversals, our recognition of evolving concepts, and our five-to-four

splits—to recognize the hazards of even informed prophecy as to what are "unquestioned constitutional rights."

Admittedly, the *Wood* case is a case in which the court was discussing the individual liability of school board members and what constitutes "good faith," but we believe that the language is still apropos. The majority in the *Wood* decision, *supra*, recognized that local officials must have the leeway to make quick, on-the-spot decisions and normally do not have the benefit of an opinion of a constitutional lawyer before doing so. The majority quoted from *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90: "As with executive officers faced with instances of civil disorder, school officials, confronted with student behavior causing or threatening disruption, also have an 'obvious need for prompt action, and decisions must be made in reliance on fractional information supplied by others.'"

This Court believes that city councils must have at least as much leeway to determine which of its citizens will be police officers, entitling them to carry guns and arrest other citizens. Thus, the Court will not, unless the law requires, substitute its judgment for the judgment of the Green Forest city council in terminating plaintiff's employment. It must now consider whether what it understands to be "the law" requires that any of the remedies requested by the plaintiff be imposed by this Court.

The plaintiff's argument contained in his brief is essentially twofold. First, he claims that his termination deprived him of a "property" interest without due process of law as required by the Fourteenth Amendment. Secondly, he claims that, even if he was not deprived of a property interest, the action of the city council in dismissing him deprived him of a "liberty interest" also guaranteed by the Constitution.

In the Court's view, the question relative to whether plaintiff was deprived of a property interest is not a difficult one, and his argument in this respect has little merit. The law announced by the United

States Supreme Court clearly is that a public employee has a property right only if he has a sufficient expectancy of continued employment to constitute a protected property interest which would entitle him to notice and a hearing prior to discharge. *Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). In order for an expectancy of continued employment to rise to the status of a constitutionally protected property right, such expectancy of continued employment must be created by, or have a basis in, a source independent of the Constitution of the United States, such as state or federal law, a municipal ordinance, established rules and regulations, or a contract. *Board of Regents v. Roth, supra.* It is undisputed and stipulated that there was no contract of employment. Nor has the plaintiff pointed to any state or federal law, any municipal ordinance, or any established rule or regulation which gave him any expectancy of employment. In fact, in its brief filed in this matter, the plaintiff states: "Mr. Johnson concedes that he served as an employee at the will of the city council and as such, his employment could be terminated at any time."

Plaintiff cites *Melton v. Carter*, 204 Ark. 595, 164 S.W.2d 453 (1942), in support of his proposition that Arkansas law is that the right to engage in lawful occupation is a "property right" protected by the Constitution. The Court does not believe that that is at all what that case says, but, instead, that it says that a business or the right to own a business may be a property right. The Court believes that Judge Roy correctly set forth the state of the law in Arkansas in this respect in *Gerrin v. Hickey*, 464 F.Supp. 276 (E.D.Ark.1976), as follows:

Arkansas case law has not specifically addressed the issue of whether a public employee not so protected but who has acquired "permanent" status as an employee has a property interest in that employment. Older decisions indicate that employment may be terminated at the will of either party where the contract of employment, either express or implied, designates no definite term of duration. See, *e.g., Miller v. Mo-Pac Transportation Co.*, 225 Ark. 475, 283 S.W.2d 158 (1955). Such contracts are unilateral and lacking in mutuality and therefore there can be no breach of contract even though the fact that discharge may not be had without just and sufficient cause is a term thereof. *Roberts v. Thompson*, 107 F.Supp. 775 (E.D.Ark. 1952); *Tinnon v. Missouri Pacific R.R. Co.*, 282 F.2d 773 (8th Cir. 1960).

Falling within this same spectrum are the cases involving non-renewal of employment contracts for public school teachers. Under Arkansas law, public school teachers are not designated "tenured" but are hired under the "continuing contract" system which provides for automatic renewal each year absent affirmative action by the school board. This system does not give rise to an expectation of continued re-employment which entitles the teacher to a property interest in that employment. *Cato v. Collins*, 539 F.2d 656 (8th Cir. 1976); *Clark v. Mann*, 562 F.2d 1104 (8th Cir. 1977).

■ Since it seems to be agreed that plaintiff's employment was terminable at will, he did not have a property interest entitling him to notice and hearing prior to his discharge. *Bishop v. Wood, supra; Board of Regents v. Roth, supra; Williams v. Day*, 553 F.2d 1160 (8th Cir. 1977); *Kyles v. Eastern Nebraska Human Services*, 632 F.2d 57 (8th Cir. 1980); and *Brouillette v. Board of Directors*, 519 F.2d 126 (8th Cir. 1975).

■ The question of whether the plaintiff's termination and the circumstances which brought it about deprived the plaintiff of a constitutionally protected right to "liberty" is a much closer question. In *Wisconsin v. Constantineau*, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1966), the Court stated: "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." In *Board of Regents v.*

*Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), the Court stated that where the state "imposed ... a stigma or other disability that foreclosed ... freedom to take advantage of other employment opportunities" the safeguards of notice and hearing are required. In discussing the type of allegation that might be "stigmatizing," *Roth* referred to charges of dishonesty and immorality, distinguishing these charges from simple failure to rehire an individual where there is no disclosure of allegations which would adversely affect the individual's future opportunities for employment.

In *Churchwell v. United States*, 545 F.2d 59 (8th Cir. 1976), the Court stated:

> This Circuit has consistently endorsed the protection of "liberty interests" as provided by *Constantineau* and *Roth*. The recent case, *Cato v. Collins*, 539 F.2d 656 (8th Cir. 1976), states that "[i]f, however, the reasons for nonrenewal are announced publicly or are incorporated into a record made available to prospective employers, the reasons may affect a teacher's chances of securing another job." 539 F.2d at 660. *See Buhr v. Buffalo Public School District No. 38*, 509 F.2d 1196, 1199 (8th Cir. 1974); *Wellner v. Minnesota State Junior College Board*, 487 F.2d 153 (8th Cir. 1973). *Cf. Horowitz v. Board of Curators of Univ. of Missouri*, 538 F.2d 1317, 1321 (8th Cir. 1976); *Greenhill v. Bailey*, 519 F.2d 5, 7 (8th Cir. 1975).

In short, what the cases say is that a public employee who is terminated by a public employer, absent a property right in his employment, has no federally protected right for which he is entitled to a remedy simply by reason of the termination. As the Court said in *Johnson v. University of Pittsburgh*, 435 F.Supp. 1328 (W.D.Penn. 1977): "Making a person less attractive for employment is not deprivation of liberty; the discharge must be based upon false and defamatory charges." *Citing Codd v. Velger*, 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977).

In order for the plaintiff to have a cause of action, it is not only necessary for the discharge to be based upon false and defamatory charges, but such false and defamatory information must be published by his employer. As the Court said in *Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976): "Since the former communication was not made public, it cannot properly form the basis for a claim that petitioner's interest in his 'good name, reputation, honor or integrity' was thereby impaired."

Keeping these principles in mind, the Court will now apply the stipulated facts to what it believes to be the law. Was the information relied upon which resulted in Officer Johnson's termination false and was it such as to stigmatize him and make it difficult for him to obtain further employment? In addition, the Court must answer whether, if so, such information was made public by the employer. If either of these tests is not met, there was no deprivation of liberty which entitled plaintiff to any remedy in this court. As distinguished Judge Urbom said in *Roach v. Plainview School District No. 5*, 499 F.Supp. 702 (D.C.Neb. 1978):

> The plaintiff's job is not the constitutionally protected interest which the plaintiff lost; she had no property interest in the job. The constitutionally protected liberty interest lost was not the liberty to perform that job but the liberty to be free from accusations of dishonesty without an opportunity to answer. It is that interest which should be made whole.

In the case at bar, did the city council of Green Forest, Arkansas, rely, in deciding to terminate plaintiff, on false charges which he should have had an opportunity to refute at a hearing? "Only if the employer creates and disseminates a false and defamatory impression about the employee in connection with his termination is such a hearing required." *Codd v. Velger*, 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92 (1976).

The stipulations of fact reflect that at approximately noon on February 20, 1979, the plaintiff was informed by the Chief of Police that a special called meeting of the city council would convene at 7:30 p. m. to

discuss and consider complaints against the police department. At approximately 3:30 on that day, the Chief, in writing, suspended the plaintiff without pay and gave as his reasons for such suspension "irregularities in duty logs and radio logs dated 11–30–78" and "entry of one 1978 Lincoln automobile . . . without cause."

The minutes of the special meeting of the city council copied in the stipulations of fact are set forth above, and reflect that the city council did, in fact, consider two separate complaints against the police department of the city. It is apparent from these minutes that in each instance, after the complaining citizen had had his say, Officer Johnson was given an opportunity to respond and he did so. Likewise, the minutes reflect that in each instance an officer on duty with Johnson at the time and present during the incident complained of made a statement and that his version of the facts coincided with and verified the statements given by Johnson. After hearing the "facts" in this manner, the city council believed that the facts indicated that Johnson "had placed his life in danger, along with the lives of Patrolman Webb and Deputy Sheriff Dale Walden, who were also with him at the time of the arrest." The minutes go on to say that "Johnson was also off-duty that evening and he admitted having two or three beers before the arrest was made. Council is of the opinion that any patrolman should not make an arrest when he has been drinking."

The parties stipulated that the reasons given in the minutes were the reasons given to Officer Johnson, and it is apparent that there is no contention that the plaintiff did not admit that he consumed beer immediately before one of the incidents. Stipulation 28 says simply that there was no testimony at the hearing establishing the period of time which lapsed from the time the plaintiff consumed the beer and that there was no testimony on whether his judgment or coordination was impaired. Thus, it appears clear that the plaintiff admits the consumption of the beer, even though this was not explicitly covered in the stipulations of fact.

What were the false charges relied upon by the City Council which the plaintiff would have had an opportunity to refute if he had been given a due process hearing? Johnson gave his version of the facts, and in each instance, another officer gave his version of the facts and they coincided, according to the stipulations of fact. There is a reference in the minutes to the drinking of beer immediately prior to one of the incidents, and it is clear that the plaintiff agrees that he drank the beer. Thus, what could he have refuted? The "facts" or "charges" which the council relied on were apparently not in dispute. It is true that from these facts and charges the council reached the conclusion that Officer Johnson had placed his life and the lives of other officers in danger, and it is the conclusion, not the facts or charges, with which plaintiff quarrels. Even if the conclusion reached by the city council is one that this Court would not have reached, it still does not make plaintiff's claim one for which he is entitled to relief. This Court's function is not to act as a super city council whose job it is to review the facts which it gets, at best, second hand, in the comfort of its chambers, and, after due reflection, decide that it would have reached a conclusion different than that reached by the council, which had to act immediately, and which had the benefit of a knowledge of all of the circumstances and an opportunity to view the entire proceedings from a position which this Court could not, by any stretch of the imagination, assume.

■ The Constitution of the United States does not guarantee the plaintiff a "right" decision of the City Council of Green Forest, Arkansas. It guarantees him only that the decision, whether "right" or "wrong" will not be based upon false charges unless he has a hearing and an opportunity to refute such false charges so that his good name will not be smeared, depriving him of the liberty of obtaining a job in the future. As was pointed out above, he does not disagree with the charges or with the facts but only the con-

clusion, and he was not deprived of liberty in violation of his rights preserved by the Constitution.

In view of what has already been said, it is not necessary to discuss whether the circumstances of Johnson's termination were disseminated and published by his employer. In view of the provisions of the Arkansas Freedom of Information Act, it did only what it was required to do under the law and hold a public meeting, but it is not necessary for the Court to determine whether that is a dissemination or publication by the employer.

In the complaint filed, the plaintiff alleged that his dismissal resulted from his public support of opponents of the members of the city council, but the stipulated facts contain no reference to these allegations, and plaintiff's brief does not discuss them so it is assumed that this claim has been abandoned.

## CONCLUSIONS OF LAW

From the stipulated facts which the Court adopts as its findings of fact, the Court makes the following conclusions of law:

1. That the Court has jurisdiction over the subject matter of this action by virtue of the provisions of 28 U.S.C. § 1343 and 42 U.S.C. § 1983.

2. That plaintiff has not met his burden of proving that the termination of his employment violated any right protected by the Constitution of the United States or any federal law or regulation.

3. That judgment should be entered against the plaintiff and in favor of the defendants, with each of the parties to pay the costs incurred by them.

4. That the plaintiff is not entitled to an award of attorney's fees to be paid by the defendants.

A judgment will be entered to carry out the conclusions reached.